WILLIAM A. DOYLE, Appellant, *vs.* MARTIN R. DOYLE, Appellee.

*Opinion filed February 20, 1913.*

1. WILLS—*when statements of the testatrix concerning undue influence are not admissible.* In a will contest case, where undue influence by the defendant is charged, statements of the testatrix, made out of the defendant's presence, tending to show that he had used undue influence, are not admissible upon that issue.

2. SAME—*what may be testified to by devisee in a suit by heir.* In a will contest case brought by an heir it is proper to allow the defendant, who is the devisee under the will, to testify that he found certain letters, which were introduced in evidence, among the papers of the testatrix after her death.

3. SAME—*what is admissible to rebut charge that devisee made false statements to testatrix concerning complainant.* Where the complainant in a will contest case charges that the defendant, the devisee, made false statements to the testatrix that complainant was a gambler and spendthrift, in order to poison her mind against the complainant, and some evidence to sustain the charge that such statements were made by defendant is introduced, it is proper to permit the introduction of letters from the complainant to the testatrix which clearly show that such statements, even if made by the defendant, were true, and that the testatrix thus had independent knowledge of the facts.

4. INSTRUCTIONS—*when refusal of instructions is harmless error.* Refusal of certain instructions for the contestant in a will case is harmless error, where his given instructions fully advise the jury as to the law applicable to the issues being tried and substantially embody the contents of the instructions so refused.

5. COSTS—*error in decreeing costs against the defendant may be corrected on appeal.* Where costs are erroneously adjudged against the defendant upon the dismissal of a bill to contest a will and the defendant assigns such action as cross-error on an appeal by the complainant, the Supreme Court, if there is no reversible error in the record, may modify the decree in that respect and affirm it as modified.

APPEAL from the Circuit Court of Shelby county; the Hon. THOMAS M. JETT, Judge, presiding.

CHAFEE & CHEW, RICHARDSON & WHITAKER, and S. S. CLAPPER, for appellant.

W. C. & W. L. KELLEY, and W. C. & T. M. HEADEN, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

William A. Doyle filed a bill in the circuit court of Shelby county against his brother, Martin R. Doyle, to set aside the will of Helen M. Doyle, deceased, the mother of contestant and defendant. The bill alleges that the testatrix was of unsound mind and memory at the time the will was executed and that its execution was procured by the undue influence of the defendant, Martin R. Doyle. The defendant answered the bill denying the material allegations, and the issues of law being joined they were submitted to a jury. The finding of the jury sustaining the will was approved by the court and a decree entered dismissing the bill for want of equity. The costs were adjudged against the defendant. The contestant has brought the record to this court by appeal, and the defendant has assigned a cross-error upon that portion of the decree adjudging the costs against him.

The general situation of the parties presented by the record is as follows: Helen M. Doyle was a widow and resided on her farm near Moweaqua. Up to a short time before the will was executed she had three living children,— appellant, a married son, who resided in Louisville, Kentucky; appellee, Dr. Martin R. Doyle, also a man of mature years, residing in East St. Louis, Illinois; and a daughter, Mary Doyle Portwood, who resided near the testatrix in Shelby county. For some years after the death of her husband the testatrix and her daughter, Mary, resided together

in the former's home. The daughter married a man by the name of Portwood. On September 10, 1905, Portwood murdered his wife in their home and immediately committed suicide. Appellant and appellee were summoned, and both of them went to Shelby county and attended their sister's funeral, remained a few days and returned to their respective homes. The testatrix was at that time about sixty-eight years of age. The evidence shows that the testatrix was very devoted to her daughter and that the tragedy resulting in her death was a shock that overwhelmed her with grief. What the cause was that led to the murder and suicide does not appear, but it is not suspected that the testatrix in any way blamed either appellant or appellee with that unfortunate occurrence. It had nothing to do whatever with the relation existing between the testatrix and her two sons, and has no connection with this case except in so far as it may throw light upon the mental capacity of the testatrix at the time the will was executed. The appellee went to Shelbyville on the 20th of September but remained only a short time. On the 22d of September, 1905, Helen M. Doyle executed the will in question. The will is very short, consisting of only four clauses. The first directs the payment of all of her funeral expenses and just debts. The second devises all of her estate, of every kind and character, real and personal, to appellee, Martin R. Doyle, his heirs and assigns forever. The third appoints appellee as sole executor, without bond, and the fourth revokes any and all former wills. The will was attested by William L. Morris and Ralph Ayars. The evidence shows that the testatrix delivered the will to Mr. Ayars, her banker, with the request that he keep it safely until her death and then deliver it to the proper party. Appellant claims that the estate of his mother amounted to about $20,000, but this is an exaggerated valuation. She owned eighty acres of land and a small amount of personal property. The estate was not worth exceeding $10,000 or

$12,000. The testatrix died in 1910, about five years after the will was executed.

Ralph Ayars gives the following account of the execution of the will: He testifies that he has been in the banking business in Moweaqua eighteen years; that he had known Helen M. Doyle most of his life, knew her husband and was acquainted with the family; that her husband died in 1902; that the family was composed of her daughter, Mary, and her two sons, William A. and Martin R. Doyle; that the daughter died five or six years before the testatrix. He testifies as to the property left by the testatrix, and says that prior to her death he did her banking business; that she had been a patron of his bank ever since he was in business; that he had conversations with her and had drawn farm leases for her under her direction, she giving him the information as to terms and he writing the leases; that in the fall of 1905 the testatrix came into the bank alone, bringing the will in question with her, and asked the witness to sign it and to procure another witness for her; that he called William L. Morris, and that he and Mr. Morris were requested by the testatrix to witness the will, which they did in her presence and in the presence of each other. After the will was executed it was deposited with Mr. Ayars by the testatrix with the request that he keep it, which he did, and that after her death he sent it by registered mail to the county clerk. He and the other witness to the will, Mr. Morris, testified that the testatrix was of sound mind and memory and competent to understand any ordinary business transaction. Mr. Ayars testifies to seeing the testatrix frequently from the time the will was made until her death; that he visited her in her last illness in company with a minister and that she was entirely rational, and during the conversation that he had with her on that occasion, which was a few days before her death, she told him to carry out her instructions about the papers that she left with him, and that he promised her

he would do so. These witnesses agree, and there is no
evidence to the contrary, that at the time the will was exe-
cuted the testatrix was alone. The other evidence in the
case shows that appellee was at his home in East St. Louis.
There is no evidence whatever that the subject of making
a will was ever discussed between the testatrix and appel-
lee, and none whatever that he knew that the will was to
be executed at the time it was made. There is no compe-
tent evidence in the record tending to support the charge
of undue influence, and that question might well have been
taken from the jury.

All of the relatives of the testatrix who testified gave
evidence in support of the mental capacity of the testatrix,
and in addition a large number of intimate friends and
neighbors who had known the testatrix intimately the last
years of her life testified to the same effect. These wit-
nesses detail various business transactions and conversa-
tions, and they agree that she was a woman of ordinarily
strong mind and capable of transacting understandingly her
ordinary business affairs. The evidence shows that she
took a deep interest in matters of religion. She had a lim-
ited education, was able to read and write, but not suffi-
ciently versed in the use of the English language to express
herself in accurate terms.

In support of appellant's contention a number of wit-
nesses testify to the effect produced on the testatrix by the
death of her daughter, and, basing their opinion upon her
conversation and conduct while grieving for her daughter,
they express the opinion that she was not mentally capable
of transacting any ordinary business affairs. The state of
the proof upon the question of mental capacity made it a
clear question to be submitted to the jury. A careful ex-
amination of the entire testimony leads us to the conclu-
sion that the verdict of the jury is in accordance with the
decided weight and preponderance of the testimony.

Appellant charges in his bill that appellee fraudulently, and for the purpose of poisoning the mind of the testatrix against him, represented to her that appellant was a gambler and a spendthrift. He charges that appellee sought to impress on the mind of the testatrix that appellant was unworthy of her confidence and that any property she might give him would be wasted in extravagant and riotous living. He alleges that these representations were false and made for the fraudulent purpose of causing his mother to disinherit him, and in support of this charge he was permitted to put in evidence the testimony of three witnesses who testified that they had known appellant from 1903 to 1905 and that he was a man of good reputation. Appellant was also permitted to prove by two witnesses that some time in the year 1905 these witnesses were employed, in connection with a man by the name of Jackson, to do some repair carpenter work for the testatrix. These witnesses testify that on one occasion while they were working for Mrs. Doyle she received a letter which purported to be a letter from appellee to her; that she read the letter and appeared to be very much excited about its contents; that she handed the letter to Jackson, who is now deceased, and insisted that he should read the letter; that Jackson did read the letter, and from the conversation that occurred between the testatrix and Jackson these witnesses understood that the letter contained serious charges against the good character of the appellant; that the letter contained statements to the effect that appellant was a drunkard and a gambler and was living a dissolute life. The letter was not produced nor is there any competent proof that appellee wrote it. Neither of these witnesses claims to have read the letter, although they were permitted to state, inferentially, some of the contents as they gathered them from the conversation between the testatrix and Jackson. The competency of any of this evidence in relation to the letter would be open to serious question if the finding had

been the other way and appellee were complaining of its introduction, but the testimony was introduced by appellant and he had the benefit of it. To meet this line of proof a large number of letters written by appellant to his mother and to his brother, the appellee, were introduced in rebuttal. These letters tend strongly to show that if appellee or anyone else ever told the testatrix that appellant was living beyond his means and was a spendthrift and engaged in gambling he told the truth. These letters are in the main appeals to his mother for money and are accompanied with promises of reformation. One of his letters to appellee confesses that he had embezzled funds of his employer and appeals to him for assistance to enable him to make restitution, to save him from imprisonment in the penitentiary. Appellant complains of the rulings of the court in admitting these letters in evidence. Appellant raised the issue himself to which these letters relate. He sought to prove that his brother had falsely misrepresented him to the testatrix and introduced some incompetent evidence to support that charge. In answer to this, the letters written by appellant in which he substantially pleads guilty to all of the offenses which he claims his brother charged against him, were certainly competent to show that appellee had not made false statements about him to his mother. Besides, the evidence shows that the letters written to the testatrix by appellant were found among her papers after her death, and these letters were competent to show that the information they contained in regard to appellant's conduct was obtained direct from appellant and not through appellee. We regard the whole question respecting the character of appellant as only remotely bearing upon the vital question in the case. If appellant was extravagant and a spendthrift and the testatrix knew this, it might afford a reasonable explanation why his mother disinherited him, and in this view the letters, in so far as they threw any light upon that question, would be competent. (*Wickes* v.

*Walden,* 228 Ill. 56; *Wilkinson* v. *Service,* 249 id. 146.)
Independently, however, of any question in respect to the
letters, there is abundant evidence about which there is no
question in the record to support the decree.

Appellee was called as a witness on his own behalf, and
was permitted, over objections of appellant, to testify to
the finding of these letters among the papers of his mother
after her death. Appellee was not examined generally.
The only fact testified to by him was the finding of these
letters in a box belonging to his mother, after her death.
Appellee was not a competent witness generally, but un-
der exception 1 of section 2 of chapter 51 of our statutes
he was competent to testify to facts occurring after the
death of the testatrix. The finding of the letters was a
fact which occurred after the death of the testatrix. There
was no error in permitting appellee to testify to this fact,
and that is as far as his testimony went.

Appellant complains, in a general way, of instructions 4,
6 and 7 given on behalf of appellee. These instructions
relate to the issue of undue influence, and tell the jury that
any statements made by the testatrix in her lifetime tending
to prove that appellee had used undue influence upon her,
if made out of the presence and hearing of appellee, could
not be considered by the jury. By instruction 7 the jury
were advised that any statements made by the testatrix out
of the presence of appellee might be considered only upon
the question of mental capacity, and, inferentially at least,
it tells the jury that such statements are not proper, if made
out of the presence of the appellee, as tending to prove
the issue of undue influence. Instruction 6 was of the
same general tenor. Aside from the fact already pointed
out that there was not sufficient evidence of undue influ-
ence to warrant the court in submitting that question to
the jury, which is a sufficient answer to the criticism upon
these instructions, we do not see any valid objections to the
instructions as abstract propositions of law. Clearly, state-

ments of the testatrix, if such had been proven, that she had executed a will in consequence of the undue influence of appellee, made out of the presence of appellee, could not be used as testimony tending to prove that appellee had, in fact, used undue influence over the testatrix.

Appellant also complains that the court refused to give several instructions at his request. The given instructions in the case fully advise the jury as to the law applicable to the issues being tried. In so far as the refused instructions were proper they were sufficiently embodied in other instructions given. It would serve no useful purpose to extend this opinion by discussing these instructions in detail.

We are satisfied that substantial justice has been done and that no error has intervened which requires us to reverse this decree. The case has been tried before two juries, both of which found the issues for appellee. Although trifling errors may have intervened, we have failed to find any of such magnitude as to justify us in awarding a new trial. We are constrained to hold, however, that an error has intervened,—inadvertently, perhaps,—in adjudging the costs against appellee. An examination of the additional abstract furnished by appellee convinces us that the decree against appellee for costs is a mere misprision of the clerk in writing the decree; that the intention of the court was that the costs should be adjudged against appellant. This clearly appears from the minutes which have been certified up for our information. This is an error that might be corrected upon motion in the court below, but since it is assigned as a cross-error here we have the power to correct it. The decree of the circuit court will be modified so as to require appellant to pay the costs, and as modified it will be affirmed.          *Decree modified and affirmed.*