## Jacob A. Sells, Appellee, v. Grand Trunk Western Railway Company et al., Appellants.

### Gen. No. 22,033.

1. JUDGMENT, § 234*—*what is misprision of clerk not affecting.* Where, though two defendants are named in the summons and *præcipe*, only one is served, appears or is mentioned in the declaration, and the plea filed is entitled in the name of such defendant and the verdict is returned in proper form against it, but the judgment order recites that the motion of "defendants" for a new trial was overruled; that "their" motion in arrest of judgment was overruled; that judgment was given against the "defendants," and that "defendants prays" an appeal, and in the bill of exceptions uses the singular term, "defendant," such use of the plural in the judgment order does not render the judgment a nullity as to the defendant served and appearing, but it will be deemed a misprision of the clerk, not affecting judgment in any way.

2. JUDGMENT, § 248*—*when error of clerk in entry of judgment may be corrected.* Error of the clerk in using a plural term in

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

designating a party in the judgment order is a mere misprision of the clerk and not ground for reversal, but is subject to correction in either the trial or the Appellate Court.

3. Master and servant, § 98*—*when necessary that employer and employee be engaged in interstate commerce.* There can be no recovery under the Federal Employers' Liability Act unless both the carrier and the employee were engaged, at the time, in interstate commerce, or in work so closely related thereto as to be practically a part of it.

4. Commerce, § 4*—*what constitutes interstate.* Switch engines engaged in breaking up trains conveying interstate commerce are to be considered as also engaged in interstate commerce.

5. Commerce, § 4*—*when both employer and employee are engaged in interstate.* Both the carrier and its employee are engaged in interstate commerce while the latter, a stationary engineer, is repairing and adjusting a cable used to hoist buckets to a coal chute from which all of the engines of a carrier, interstate as well as intrastate, are' coaled.

6. Master and servant, § 699*—*when evidence sufficient to show obedience to order of railroad foreman.* In an action for personal injuries to a railroad employee, evidence as to whether or not he went into the place in which the injury was received pursuant to an order of the foreman, *held* sufficient to support a finding by the jury that he was obeying such an order.

7. Master and servant, § 695*—*when evidence sufficient to show negligence in causing falling of railroad coal-hoisting bucket on employee.* Evidence in an action by a railroad employee to recover for injuries through the dropping of a coal-hoisting bucket while he was under the drum with the knowledge and in the presence of the foreman and superintendent, adjusting the cable, *held* sufficient to support a finding that the accident happened through defendant's failure to exercise ordinary care.

8. Master and servant, § 349*—*what is not assumption of risk of negligence of fellow-servant.* The act of an employee in placing himself in a position, in performing his work, that he may be injured if the employer's servants are negligent, is not an assumption of the risk of injury from such negligence.

9. Master and servant, § 302a*—*when defense of assumption of risk of negligence of fellow-servant is unavailable.* The defense of the assumption of risk of injury from the negligence of a fellow-servant is not available under the Federal Employers' Liability Act.

10. Master and servant, § 302*—*what is doctrine of assumed risk.* The doctrine of assumed risk is, in substance, that where an

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Sells v. Grand Trunk Western Ry. Co., 206 Ill. App. 45.

employer has negligently created a dangerous condition, and his employee continues to work knowing of its existence, he will be held to have assumed the risk caused by such dangerous condition.

11. MASTER AND SERVANT, § 833*—*when instruction on assumed risk is not reversibly erroneous.* Failure to make reference, in an instruction concerning assumed risk, to defects arising from the negligence of the master of which the servant has knowledge and the risk of which he assumes, is not ground for reversal where the evidence discloses no such defect.

12. INSTRUCTIONS, § 38*—*right to give in language of statute.* It is not error to give an instruction in the language of the statute without addition.

13. DAMAGES, § 200*—*when failure to define "contributory negligence" in instruction on damages is not error.* In an action under the Federal Employers' Liability Act by an employee to recover for personal injuries, failure to define "contributory negligence" in the instruction stating the measure of damages is not error, where the definition is given in another instruction.

14. APPEAL AND ERROR, § 1241*—*when instruction containing error common to instructions for both parties is not reversibly erroneous.* Failure to state in an instruction that the jury's findings for plaintiff must be "under the instructions of the court" is not ground for reversal where this question is fully dealt with in a separate instruction, especially where the quoted words are also omitted in defendant's instructions.

15. MASTER AND SERVANT, § 98*—*when instruction on apportionment of damages in action under Federal Employers' Liability Act is proper.* In an action under the Federal Employers' Liability Act, an instruction to the jury that, if plaintiff was guilty of negligence contributing to his injury, his damages should be by the jury "diminished in proportion to the amount of negligence attributable to the plaintiff," is proper.

16. INSTRUCTIONS, § 137*—*when requested instruction is properly refused.* An instruction which denies the plaintiff a right to recover, except on the proof of a certain fact, is properly refused where there are other grounds on which a verdict for plaintiff can be sustained.

17. MASTER AND SERVANT, § 795*—*when instruction requested by defendant properly refused.* In an action by a servant against a railroad company for personal injuries, the refusal of an instruction on assumed risk requested by defendant, *held* proper.

18. DAMAGES, § 241*—*when verdict not deemed to be result of passion and prejudice.* A ten per cent. reduction of the verdict by

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the trial court, *held* not evidence that it was so excessive as to show passion and prejudice.

19. DAMAGES, § 133*—*when verdict for loss of fingers of left hand is not excessive.* A verdict for $7,000 is not excessive where injury resulted in the loss of all the fingers of the left hand, except the little finger, and in rendering the thumb stiff.

Appeal from the Circuit Court of Cook county; the Hon. LOCK-WOOD HONORÉ, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1916. Affirmed. Opinion filed May 31, 1917. Rehearing denied June 11, 1917.

KRETZINGER & KRETZINGER and L. L. SMITH, for appellants.

ELMER & COHEN, for appellee.

MR. JUSTICE GOODWIN delivered the opinion of the court.

The appellants seek to reverse a judgment in favor of appellee for $7,000, recovered under a declaration which set out substantially the following allegation: The Grand Trunk Western Railway Company, defendant, was operating an interstate railroad, and engaged in interstate commerce; plaintiff was employed by it as a stationary engineer engaged in interstate commerce on behalf of the defendant; the latter owned and operated a coal chute adjoining its tracks, used for the purpose of loading with coal locomotive engines engaged in interstate commerce; in connection with the coal chute it operated a certain hoist with buckets and contrivances for the purpose of hoisting the coal in the chute, and while plaintiff was in the act of repairing and adjusting the cable used in that connection, defendant negligently permitted one of the buckets to fall, and in consequence plaintiff's fingers were caught and crushed between the cable and the drum around which it was wound. In the second count plaintiff also

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

says that the coal chute was out of repair and dangerous, and defendant negligently ordered certain of its employees to release the bucket; and in the third count it is alleged that the defendant negligently commanded him to adjust the cable, while the fourth count averred that the chute was old, worn, weak, defective, not properly adjusted, out of place, and insecurely fastened, and, by means of defendant's negligence in maintaining the instrumentality in that condition, one of the buckets was caused to fall.

The only defendant served, appearing, or mentioned in the declaration in this case was the Grand Trunk Western Railway Company, although the Grand Trunk Junction Railway Company was named in the summons and *præcipe*. The plea filed in the case, which properly entitled it *"Jacob A. Sells vs. Grand Trunk Western Railway Company,"* begins "and the defendant, by Kretzinger & Kretzinger, its attorneys, comes and defends, when, etc."

The jury returned a verdict of guilty against the defendant in proper form, but the judgment order recited that the motion of defendants for a new trial was overruled, likewise their motion in arrest of judgment was overruled; the judgment was given against the defendants and that defendants "prays" an appeal from the judgment, etc. The bill of exceptions, however, which sets out the motion for a new trial in full, shows that it was made by "defendant," and, when it was overruled, the "defendant" excepted; that the "defendant" moved the court to arrest the judgment, but this was denied, and to this action the defendant excepted and concludes, "And forasmuch as the matters aforesaid do not fully appear of record the defendant, Grand Trunk Western Railway Company, tenders this its bill of exceptions," etc.

In this state of the record it is contended that the judgment was erroneous as to the Junction Railway

Company, and consequently erroneous as to both. In our view, however, no judgment has been entered against any one except the party served. The Junction Railway Company was obviously not a party to this cause, never having been served with process or brought before the court or mentioned in any of the pleadings, and the judgment is based upon a verdict which refers to one defendant only, namely, the defendant brought into court. It would be inexact to say that the judgment was a nullity as to the Grand Trunk Junction Railway Company, since the judgment does not run against it, but only against the defendants, and the Junction Company was never a defendant in the case. It is said further that the defendant's motion in arrest of judgment should have been sustained at the time the motion in arrest of judgment was made; but the Junction Railway Company was not in the case at the time the motion was made, was not mentioned in the pleadings, or in the verdict, and it could not, therefore, make a motion in arrest of judgment; moreover, the bill of exceptions clearly shows that it did not make any such motion. The use of the plural instead of the singular number in referring to the defendant was clearly a misprision of the clerk which in no way added to or took away from the judgment's effect. It could be corrected by a motion in the trial court, and we, ourselves, have power to correct it here. (*Doyle v. Doyle,* 257 Ill. 229.) Such a misprision does not constitute a reversible error. (*Laflin v. White,* 38 Ill. 340.) Our Supreme Court, in *Hofferbert v. Klinkhardt,* 58 Ill. 450, in speaking of a failure to use the plural when it was obvious that the plural was meant, said: "So slight a mistake, when we can see from the context what was clearly intended by the court, ought not to vitiate and render void a judicial record." It may be noted, though it is, of course, not important, that an inspection of the record

in another appeal taken in the same cause shows that appellant, so far from objecting to this misprision, did all in its power to preserve it, apparently in the hope that it might be considered reversible error. However, it is clear that it in no way affected the rights of the parties or of any one else, and, if it did, it would be subject to correction in this court.

We agree, of course, with appellant's contention that there can be no recovery under the Federal Employers' Liability Act unless both carrier and injured employee were at the time engaged in interstate commerce, or in work so closely related thereto as to be practically a part of it. It is necessary, therefore, to examine the evidence for the purpose of determining whether at the time both parties were thus engaged. It appears that the plaintiff, an engineer at the only coal dock operated by the defendant, ran the engine in connection therewith which hoisted all the coal used in its engines in Chicago. This coal was hoisted into a chute from which the tenders were filled. Defendant was engaged in interstate commerce; very few of its trains were local, and it had but one freight engine and two passenger engines which operated entirely within the State. We think counsel for appellee were clearly correct in contending that switch engines engaged in breaking up trains conveying interstate commerce must be considered as also engaged therein. The business of plaintiff, therefore, was the operation of the instrumentality which actually loaded defendant's interstate commerce engines with fuel, and the evidence discloses that he was injured while repairing that instrumentality. In these circumstances it seems clear that the parties were engaged in interstate commerce within the rule laid down by the United States Supreme Court in *Shanks v. Delaware, L. & W. R. Co.*, 239 U. S. 556, that: "The true test of employment in such commerce in the sense intended is, was the em-

ployee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?'' In view of the facts in this case, the continued operation of the coal chute was necessary to the continuance of defendant's interstate traffic; the repair of the instrumentality was as much a part of interstate commerce as the repair of a bridge regularly used in interstate transportation. One engaged in the latter employment has been held to be employed in interstate commerce in *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146 [3 N. C. C. A. 779]. There must be some line, of course, between what is remotely connected with interstate commerce and what is so directly connected with it as to be a part of it. The United States Supreme Court in *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177 [11 N. C. C. A. 992], held that where a switching crew engaged in switching coal standing on a storage track to a coal shed, where it was to be placed in bins or chutes and supplied as needed to locomotives of all classes, there was no such close or direct relation to interstate transportation as to make it practically a part of it; and there was no distinction in principle between such an act and the mining of the coal. There is an obvious difference between this case and one where the employee is at the time engaged in repairing the necessary instrumentality with which the engines engaged in interstate commerce are constantly and directly supplied with fuel. We cannot agree with the contention that the decisions in *Pedersen v. Delaware, L. & W. R. Co., supra,* and *Chicago, B. & Q. R. Co. v. Harrington, supra,* are conflicting, and that the latter must be taken as overruling the former.

It is next contended that the verdict and judgment are contrary to the clear weight and preponderance of the evidence. It appears that a portion of the machinery used in loading the chute consisted of a cable

Sells v. Grand Trunk Western Ry. Co., 206 Ill. App. 45.

which went through a pulley apparatus at the top, and around a drum below; there were two buckets which were drawn in rotation to the top and dumped; while a crew at the top were repairing the apparatus, plaintiff, either in compliance with an order given by his foreman, as he claims, or without such an order, as defendant claims, went underneath the drum to straighten out the cable which was ordinarily wound around the drum, but which had become unwound so that about six feet of the strands hung from the bottom of the drum; while he was engaged in this way, some one loosened the bucket at the top, with the result that plaintiff's fingers were caught between the drum and the cable and squeezed off. The testimony upon the question whether the foreman ordered plaintiff to go underneath the drum and straighten out the cable is conflicting. A laborer who did not understand English corroborated the plaintiff but for defendant it is insisted that he could not have known whether such an order was given because it was given in English, and it appeared upon the trial that the witness did not understand that language. For plaintiff it is insisted that, as the witness was present, he might well have known and understood that the foreman was directing plaintiff to go underneath the drum, even though he did not understand the actual words used. We are, in any event, unable to say that the jury's conclusion that the order was given, if it did so conclude, was against the manifest weight of the evidence. But we do not think that proof of such an order was necessary to sustain the verdict. Plaintiff went underneath the drum with the known purpose of adjusting the cable, and in the presence of his foreman and of the superintendent of the repairing crew. In these circumstances, we think there was evidence to justify the jury in finding that the accident happened through defendant's failure to exercise ordinary care, especially as it must

have been obvious to the superintendent that his crew could not permit a bucket to drop without endangering the safety of the plaintiff. For defendant it is claimed, however, that plaintiff knew that the repairing gang was releasing the east bucket which, when released, was likely to fall and injure him, and therefore he assumed that risk. We think this a misconception of the doctrine of assumed risk. It may be said that plaintiff placed himself in a position where he was in danger of injury if defendant's servants were negligent, but this employees, of necessity, constantly do. Such an act is not, however, an assumption of any risk except that of injury through the negligence of a fellow-servant—a defense not available under the Federal Employers' Liability Act. The doctrine of assumed risk is, in effect, substantially this, that where an employer has negligently created a dangerous condition, and his employee continues to work knowing of its existence, he will, in certain circumstances, be held to have assumed the risk caused by the dangerous condition thus created. (*Seaboard Air Line Ry. v. Horton*, 239 U. S. 595.)

It is further contended that certain instructions were erroneous. The one dealing with the assumption of risk is criticised because "it makes no reference to defects which arise from the negligence of the master of which the servant has knowledge and assumes." As we have indicated, the evidence disclosed no such defect in the present case. The third instruction which stated the provisions of the Federal Safety Appliance Act in question is criticised, but as it is in the language of the statute and nothing is added to it, it cannot be said to be erroneous. In *Mertens v. Southern Coal & Mining Co.*, 235 Ill. 540, in sustaining an instruction in the language of a statute, our Supreme Court quoted *Kellyville Coal Co. v. Strine*, 217 Ill. 516, at page 536, as follows:

"The instruction was couched in almost the exact language of the statute, and 'where an instruction is given in the language of the statute, it must be regarded as sufficient, because laying down the law in the words of the law itself ought not to be pronounced error.'"

The fourth instruction, which is objected to, correctly stated the measure of the damages which plaintiff was entitled to recover if they found in his favor, provided they found that he was not guilty of contributory negligence. Objection is made to it on the ground that it does not define the term "contributory negligence," but it appears that this term is fully defined in another instruction. It is not necessary, of course, to repeat such a definition in each instruction. The objection that the instruction fails to require the jury to determine its finding for the plaintiff from the evidence under the instructions of the court, and to pass upon the question of contributory negligence under the instructions of the court, is not well taken. The jury were elsewhere especially admonished that unless the plaintiff had proven his case by a preponderance of the evidence he could not recover, and if the words "under the instructions of the court" were essential, it may be noted that they are lacking likewise in all of the instructions asked by defendant. It is next contended that the portion of the instruction dealing with damages, which advises the jury that if the plaintiff was guilty of negligence contributing to his injury, his damages "should be by you diminished in proportion to the amount of negligence attributable to the plaintiff," is erroneous. We think, however, it is sustained by the decision of the United States Supreme Court in *Norfolk & W. Ry. Co. v. Earnest,* 229 U. S. 114, where the court say, at page 121:

"The other criticism deserves more discussion. The thought which the instruction expressed and made plain was that, if the plaintiff had contributed to his

injury by his own negligence, the diminution in the damages should be in proportion to the amount of his negligence. This was twice said, each time in terms readily understood. But for the use in the second instance of the additional words 'as compared with the negligence of the defendant' there would be no room for criticism.''

It will be noted that in the present case the language of the instruction is substantially identical with that approved by the United States Supreme Court, and that the objectionable words were omitted.

It is further objected that the court erred in refusing to instruct the jury, in substance, that plaintiff could not recover unless he ''was replacing the coils upon the drum in question in obedience to an order of his foreman.'' As we have already suggested, there were other grounds upon which the verdict could be sustained, and therefore the action of the court in refusing to give the instruction must be sustained.

The second of defendant's refused instructions was properly rejected upon a number of grounds. The language in regard to assumed risk is too broad; it refers to the question of whether the plaintiff knew that the drum was likely to be started. There was no evidence in the record that the drum was started. It makes knowledge that the drum was likely to be started fatal to his right to recovery, even though that knowledge might have come at a moment too late for him to avoid the injury. Further, as we have said in another place, knowledge that the buckets were ''liable to be started'' through the negligence of defendant's servants, or, more properly, that a bucket was liable to fall if the repairing crew were negligent, did not make that negligence a risk which plaintiff assumed.

Finally it is contended that the verdict is excessive. Counsel have cited cases which hold that a verdict so obviously excessive as to indicate passion and prejudice cannot be cured by remittitur, and the action of

Sells v. Grand Trunk Western Ry. Co., 206 Ill. App. 45.

the court in this case is cited as evidence that the verdict here was of that kind. The reduction of a verdict by a little more than ten per cent. indicates no more than an opinion by the court that it was slightly in excess of what the evidence justified. We cannot assume from this that it was the result of prejudice and passion. Nor do we think the judgment finally entered for $7,000 can be said in any event to be clearly excessive. The plaintiff, as the result of the accident, has a left hand from which all the fingers except the little finger have been removed, and the thumb is rendered stiff; the degree to which this accident incapacitated him in the use of the hand was a matter properly for the court and jury who saw it, and in view of the rulings of this court and of the Supreme Court upon the question of damages growing out of similar injuries, we are unable to say that the allowance of $7,000 was necessarily excessive.

As already indicated, we are of the opinion that the inadvertent use of the plural number in writing up the judgment against the defendant in no way affected its rights or liabilities, and could not, therefore, be said to be prejudicial or harmful error, but in order that the judgment may correspond with the record, it is ordered that the judgment be corrected and amended in form to a judgment against one defendant alone, and that suitable corrections be made to that end. The judgment will be corrected in form, and affirmed.

*Affirmed.*