CHARLES W. KIBLER, ADMINISTRATOR, APPELLEE, V. JAMES
C. DAVIS, DIRECTOR GENERAL, APPELLANT.

FILED MARCH 12, 1923. No. 22234.

1. **Commerce:** FEDERAL · EMPLOYERS' LIABILTY ACT: INTERSTATE EM-
PLOYMENT. Where one is engaged in shoveling coal into a pit, to
be elevated by machinery into a coal chute for immediate use in
engines, used in both interstate and intrastate traffic, he is engaged
in a work so closely related to interstate transportation as to be a
part of it, and is within the protection of the federal employers'
liability act.

2. **Evidence,** examined and set out in the opinion, *held* sufficient to
sustain a finding of negligence.

3. **Master and Servant:** INJURY TO SERVANT: DEFENSE OF CONTRIBU-
TORY NEGLIGENCE: In actions under the federal employers' liability
act, contributory negligence, no matter how great, is not a defense,
but may be considered for the purpose of reducing a recovery.

4. ———: INSTRUCTIONS: ASSUMPTION OF RISK. Where the defense
of assumption of risk is submitted to the jury on conflicting evidence
and under proper instructions, their verdict is conclusive.

5. **Instruction,** examined and substance stated in the opinion, *held* to
correctly state the law applicable to assumption of risk.

APPEAL from the district court for Buffalo county:
BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*C. A. Magaw, Thomas W. Bockes* and *Thomas F.
Hamer,* for appellant.

*William E. Shuman* and *N. P. McDonald, contra.*

Heard before MORRISSEY, C. J., ALDRICH, DAY and
GOOD, JJ., TROUP, District Judge.

GOOD, J.

Plaintiff, as administrator of the estate of Albert
Gammill, deceased, recovered a judgment for damages
under the federal employers' liability act against the de-
fendant, for negligently causing the death of Gammill,
and defendant has appealed.

Defendant denied any negligence on its part, pleaded
assumption of risk, and that the death of Gammill re-

sulted wholly from his own negligence, and denied that
deceased was engaged in interstate commerce or that
defendant was liable under the federal employers'
liability act.

The principal questions for solution, as presented by
this appeal, are: (1) Was deceased, at the time he met
his death, engaged in interstate transportation or in work
so closely related to it as to bring the case under the
federal employers' liability act? (2) Was defendant
guilty of negligence that caused or contributed to the
death of Gammill? (3) Did deceased assume the risk of
injury? (4) Did the court err in giving or refusing in-
structions on the subject of assumption of risk?

1. The facts surrounding the employment and death
of Mr. Gammill are about as follows: The Union· Pacific
Railroad Company maintains coal chutes and bins at
Kearney, Nebraska, at which all classes of trains, both
interstate and intrastate, are coaled. These coal bins
are elevated and stand above and over the two main-line
tracks and the passing track. Engines stop beneath these
bins and receive coal by means of a chute which dumps
it into the engine tender. The coal reaches the elevated
bins from cars which are first pushed in on what is
known as the hopper track, which is immediately north
of and adjacent to the passing track. A pit constructed
beneath the hopper track receives the coal as it is
dumped from the bottom of coal cars, and from this pit it
is elevated by machinery to the bins overhead. In dumping
the coal into the pit, some remains in the car, and some
is spilled about on the hopper track. The coal that
remains in the car and that which is scattered about the
track is required to be shoveled into the pit. This was
the work in which Gammill was employed. The coal
bins above the three tracks would hold about 250 tons,
and were filled on an average of once in 36 hours, so
that the coal placed in these chutes was for immediate use
in the engines of the railroad company.

The rule applicable to the question under consideration is that for an employee to come under the federal employers' liability act he must, at the time of the injury, be engaged either in interstate transportation or in work so closely related to it as to be practically a part of it.  *Shanks v. Delaware, L & W. R. Co.*, 239 U. S. 556; *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146. While the rule is well established, much difficulty arises over its application to a given state of facts, and there is a marked want of harmony in the decisions of the various courts in determining whether work of a similar character, that is, work that is not directly a part of interstate transportation but is essential to and intimately connected with or related to it, comes within the rule. We think no useful purpose would be subserved by attempting a review of the cases.  Each one must be determined upon the facts and circumstances of the particular case. In the instant case, the coal which decedent was shoveling was intended for use in and was essential to the operation of interstate trains.  The work performed was the last manual labor performed before it was appropriated to its intended use.

We are of opinion, where one is engaged in shoveling coal into a pit, to be elevated by machinery into a coal chute for immediate use in engines used in both interstate and intrastate traffic, that he is engaged in a work so closely related to interstate transportation as to be a part of it, and that he is within the protection of the federal employers' liability act.  Cases in which there is a more or less similar application of the rule are: *Guy v. Cincinnati N. R. Co.*, 198 Mich. 140; *Pedersen v. Delaware, L. & W. R. Co., supra; Norfolk & W. R. Co. v. Earnest*, 229 U. S. 114; *St. Louis, S. F. & T. R. Co. v. Seale*, 229 U. S. 156; *North Carolina R. Co. v. Zachary*, 232 U. S. 248; *Philadelphia, B. & W. R. Co. v. Smith*, 250 U. S. 101; *Erie R. Co. v. Collins,* 253 U. S. 77; *Erie R. Co. v. Szary*, 253 U. S. 86; *Philadelphia & R. R. Co. v. Di Donato*, 256 U. S. 327; *Horton v. Oregon-Washing-*

*ton R. & N. Co.,* 72 Wash. 503; *Southern R. Co. v. Peters,* 194 Ala. 94; *Barlow v. Lehigh V. R. Co.,* 143 N. Y. Supp. 1053; *Chicago, R. I. & P. R. Co. v. Bond,* 47 Okla. 161; *Kelly v. Erie R. Co.,* 177 N. Y. Supp. 278; *Roush v. Baltimore & O. R. Co.,* 243 Fed. 712; *Kamboris v. Oregon-Washington R. & N. Co.,* 75 Or. 358; *Sells v. Grand T. W. R. Co.,* 206 Ill. App. 45; *Slatinka v. United States Railway Administration,* 194 Ia. 159.

2. It is argued that the evidence does not show any actionable negligence on the part of defendant. The evidence shows that the hopper track was a stub track long enough to hold 14 cars. Its eastern end was connected by a switch with the passing track. The western half of the hopper track was level and about four feet higher than the adjacent tracks. The east half inclines downward to the switch. The coal pit is about 30 feet long and located at the east end of the level, elevated portion of the track, and on each side of the pit there is an iron wall some three feet distant from the track. The custom was for the switching crew to set in five or six cars of coal at a time. These would be pushed to the west end of the hopper track, leaving the last car of coal of the string over the pit. When this was unloaded, the shovelers would "pinch" or push the car to the east and allow it to descend the incline by gravity. Then the next car would be "pinched" or pushed over the pit and unloaded and disposed of in like manner as the first, and so on, until the last car was unloaded, which would be left standing over the pit. The switching crew, when being advised that other cars of coal were needed, would then pick up the empty cars and remove them from the hopper track. In doing so, they would sometimes push other cars ahead of the engine and connect with the empty cars to be removed. On the day of the accident all the cars, six in number, had been unloaded and the coal shoveled into the pit by about 10 o'clock in the forenoon. The foreman requested other cars to be set in for unloading, but this was not done

until shortly after noon. Gammill and his fellow workmen were standing or leaning against the west end of the empty car, standing over the coal pit, ready to resume their labors when another supply of coal for unloading was furnished. Shortly after 1 o'clock in the afternoon, the switching crew pulled from the west on the passing track and past the coal pit a string of ten cars, five being loaded box cars and five being loaded with coal. The front end of the engine was coupled to these cars. This string of cars was pushed by the engine onto the hopper track and against the empty coal cars and up the inclined track against the car standing over the pit, to the west of which Gammill was standing, knocking him down, running over him and inflicting injuries from which he died. The evidence shows that this string of cars was pushed violently along the track; that no whistle was blown or other signal given, and that no flagman was placed on the front end of the advancing string of cars to give warning to any one; and it is also disclosed that the engineer on the switch engine was aware of the fact that coal shovelers were likely to be on the hopper track, waiting to perform their duties.

Under the circumstances disclosed, we think there was sufficient in the evidence to warrant the jury in finding that the defendant was negligent.

3. Defendant contends that the rule stated in *Merkouras v. Chicago, B. & Q. R. Co.*, 104 Neb. 491, is in point, but we think there is a clear distinction between the *Merkouras* case and the one at bar. That was a case not under the federal employers' liability act, and the doctrine of comparative negligence was applicable, and it was held in that case that the negligence of plaintiff was more than slight. In actions under the federal act, contributory negligence, no matter how great, is not a defense, but may be considered for the purpose of reducing the recovery. *Fitzpatrick v. Hines*, 105 Neb. 134; *Chicago, R. I. & P. R. Co. v. Ward*, 252 U. S. 18.

4. It is argued that, assuming that there was negligence in the manner of handling the cars, in placing them upon the hopper track, there is no liability, because deceased had assumed the risk of injury arising from the manner in which such cars were ordinarily placed on that track. There is a conflict in the evidence as to whether a flagman was usually kept on the front end of a string of cars, when being pushed onto the hopper track, and the evidence shows that the cars were, on this particular occasion, pushed with more than usual violence. Where the defense of assumption of risk is submitted to the jury on conflicting evidence and under proper instructions, its verdict is conclusive on the question. *Fitzpatrick v. Hines, supra; Morris v. Hines,* 107 Neb. 788.

5. Defendant complains of the giving and refusal of instructions on the subject of assumption of risk. The instruction given is quite lengthy and will not be quoted in full. In effect, it told the jury that an employee assumes the ordinary risks and dangers incident and peculiar to the employment upon which he enters, but does not assume the risks or dangers arising from sudden, unforeseen circumstances, not ordinarily incident to his employment, and further charged that deceased assumed all the risks and hazards incident and peculiar to the. business of coal-shoveling, and, if from the evidence they believed the death of Gammill was due to or the result of the risks and hazards incident and peculiar to the business of coal-shoveling, that plaintiff could not recover. We think this instruction fairly stated the law applicable to the question and covered the ground of the instruction requested by defendant. It was unnecessary, and indeed would not have been proper, to have repeated the same rule in another instruction.

No substantial or prejudicial error has been found. The judgment is

AFFIRMED.