MRS. FRED SMITH, Appellant, v. INTERURBAN RAILWAY COMPANY et al., Appellees.

COMMERCE: Interstate—Employee Not Engaged in—Workmen's Compensation Act. A freight conductor on a railway, employed on a line entirely within the state, who had placed a car engaged in interstate commerce out of his train upon a transfer track, and then had taken his train to the railway yards, where it was placed on the siding, and the caboose and motor were uncoupled and taken to the yard office, where he boarded the caboose, and who was thereafter killed by falling from the platform of the caboose, while taking it and the motor to the barns, held not to have been engaged in interstate commerce at the time of his injury, and to have been within the scope of the Iowa Workmen's Compensation Act. (Sec. 2477-m *et seq.*, Code Supp., 1913.)

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

MARCH 18, 1919.

REHEARING DENIED JULY 7, 1919.

THIS appeal involves a question arising under the Workmen's Compensation Act. The case was tried upon an agreed statement of facts, which, so far as necessary to a decision of the questions argued by counsel, are referred to in the opinion.—*Reversed.*

*Dunshee, Haines & Brody,* for appellant.

*C. Woodbridge,* for appellees.

STEVENS, J.—The defendant Interurban Railway Company is a corporation organized under the laws of the state of Iowa, owning and operating a line of railway from Des Moines to Perry and Colfax, Iowa. On the evening of January 28, 1917, plaintiff's intestate left Des Moines, in charge of one of defendant's freight trains, for Perry. The train included one car and some articles of interstate commerce, all of which were delivered to the consignees at Perry. A new train was made up for the return trip, and included one car billed from Perry, Iowa, by way of the Minneapolis & St. Louis Railroad to St. Paul, Minnesota. Upon arrival at Des Moines, early the following morning, this car was placed on the transfer track of the Minneapolis & St. Louis Railway Company, and the train, in charge of deceased, proceeded to the yards of defendant, where it was placed on a siding, and the motor and caboose uncoupled therefrom. The motor, with caboose attached, then proceeded to the yard office of defendant, where deceased boarded the caboose, and signaled the motorman to proceed to place the motor in the barn, and the car on a siding. At some point between the yard office and the barn, the conductor fell from the platform of the caboose, and was fatally injured.

Proceedings were begun in the name of plaintiff, who is the surviving widow of deceased, under the Workmen's Compensation Act; and, by stipulation of the parties, the same was submitted to the industrial commissioner, without arbitration, who found that deceased, at the time of the accident, was not engaged in interstate commerce, and was entitled to compensation. Upon appeal to the district court, this finding was reversed, and claimant now appeals. The only question argued by counsel is whether deceased, at the time of his death, was engaged in interstate commerce.

I.  As indicated, the lines of defendant Interurban Railway Company were confined wholly within the state, and it engaged in interstate commerce only when handling cars or packages received from outside the state, or destined to points beyond the state line.  To what extent its traffic consisted of interstate shipments, the record does not disclose.  It is conceded by appellant that deceased, from the time the train left Perry until the delivery of the interstate car to the transfer track of the Minneapolis Company, was engaged in interstate commerce, so that, unless there was some intervening service not directly or immediately connected with interstate commerce, so as substantially to form a part or necessary incident thereof, plaintiff cannot recover.

Numerous decisions of the Supreme Court of the United States are cited and relied upon by both parties.  The court, in *North Carolina R. Co. v. Zachary*, 232 U. S. 248, which involved the question of the railway company's liability for the death of an engineer, who had prepared his engine for the movement of a train of cars destined for transportation beyond the state line from one point to another within the state, who was struck by another engine and fatally injured, while returning from a hotel where he had gone for lunch, said:

"It is argued that because, so far as appears, deceased had not previously participated in any movement of interstate freight, and the through cars had not as yet been attached to his engine, his employment in interstate commerce was still *in futuro*.  It seems to us, however, that his acts in inspecting, oiling, firing, and preparing his engine for the trip to Selma were acts performed as a part of interstate commerce, and the circumstance that the interstate freight cars had not as yet been coupled up is legally insignificant."

In *New York C. & H. R. R. Co. v. Carr*, 238 U. S. 260, the court said:

"The plaintiff was a brakeman on an interstate train. As such, it was a part of his duty to assist in the switching, backing, and uncoupling of the two cars, so that they might be left on a siding, in order that the interstate train might proceed on its journey. In performing this duty, it was necessary to set the brake of the car still attached to the interstate engine, so that, when uncoupled, the latter might return to the interstate train and proceed with it, with Carr and the other interstate employees, on its interstate journey. * * * Each case must be decided in the light of the particular facts, with a view of determining whether, at the time of the injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof. Under these principles, the plaintiff is to be treated as having been employed in interstate commerce at the time of his injury."

The facts in *Erie R. Co. v. Winfield*, 244 U. S. 170, were, in substance, as follows: Deceased was employed as a switchman in the company's yards at Croxton, New Jersey. His duties involved the movement of both interstate and intrastate goods. He was injured while leaving the yards, at the close of his day's work. The court held he was employed in interstate commerce, saying:

"In leaving the carrier's yard, at the close of his day's work, the deceased was but discharging a duty of his employment. * * * Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work, and partook of the character of that work as a whole; for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so, when he was leaving the yard at the time of the injury, his employment was in both. That

he was employed in interstate commerce is, therefore, plain, and that his employment also extended to intrastate commerce is, for present purposes, of no importance."

A fireman employed by an interstate railway company, who was killed while aiding in the movement of several cars loaded exclusively with intrastate freight between two points in the same state, was held in *Illinois Cent. R. Co. v. Behrens,* 233 U. S. 473, not engaged in interstate commerce. The court said:

"Here, at the time of the fatal injury, the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. That he was expected, upon the completion of that task, to engage in another, which would have been a part of interstate commerce, is immaterial, under the statute; for, by its terms, the true test is the nature of the work being done at the time of the injury."

See, also, *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177. The facts in *Erie R. Co. v. Welsh,* 242 U. S. 303, are somewhat similar to the facts in the case at bar. In that case, a yard conductor on an interstate railway was injured while alighting from a slowly moving freight engine, for the purpose of reporting to the yardmaster for further orders, having executed all previous orders. The Supreme Court of Ohio held that he was not engaged in interstate commerce. Affirming the decision of this court, the Supreme Court of the United States said:

"It was in evidence, also, that the orders plaintiff would have received, had he not been injured on his way to the yardmaster's office, would have required him immediately to make up an interstate train. Upon the strength of this, it is argued that his act at the moment of his injury partook of the nature of the work    *    *    *    he would have

· been called upon to perform. In our opinion, this view is untenable. By the terms of the Employers' Liability Act, the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act. * * * And this depends upon whether the series of acts that he had last performed was properly to be regarded as a succession of separate tasks, or as a single and indivisible task. It turns upon no interpretation of the act of Congress, but involves simply an appreciation of the testimony and admissible inferences therefrom, in order to determine whether there was a question to be submitted to the jury as to the fact of employment in interstate commerce. The state courts held there was no such question, and we cannot say that, in so concluding, they committed manifest error. It results that, in the proper exercise of the jurisdiction of this court in cases of this character, the decision ought not to be disturbed."

Whether, therefore, deceased, at the time he received the fatal injuries, was engaged in interstate commerce, must be determined, in the light of the foregoing decisions, upon the admitted facts. Defendant's lines of railway extended between points located within the state; and, as above stated, it was engaged in interstate commerce only when employed in moving freight delivered to it from a point without the state, or destined to a point beyond the state line. Primarily, its business was intrastate. The movement of its train from Des Moines to Perry and return derives its interstate character from the carriage of certain articles and two cars, one received from without, and the other destined to a point beyond, the state line. Upon delivery of the car billed by way of the Minneapolis & St. Louis Railroad to St. Paul upon the transfer track of said company at Des Moines, the interstate service of the defendant

and deceased terminated, as the movement of interstate freight was not thereafter involved. The train remained in charge of deceased, who directed its movement until the motor and caboose were uncoupled therefrom. It must be assumed that, in going to the yard office, he was performing some service connected with his employment; and it appears, from the stipulation of the parties, that the movement of the motor and caboose from that point was directed by him. It is true that, at the time he was injured, deceased was returning with instrumentalities that had been used, during the day, in interstate commerce; but, as above stated, from the time the train left the transfer track of the Minneapolis & St. Louis Railroad Company, the service was wholly intrastate. The engineer in *North Carolina R. Co. v. Zachary*, 232 U. S. 248, was killed while waiting to couple his engine to a train of cars billed to a point outside the state. There was no intervening intrastate service to be rendered by him. The distinction between the case at bar and *New York C. & H. R. R. Co. v. Carr*, supra, is made clear by the excerpt quoted from the opinion. Deceased was not injured while leaving defendant's yards, immediately after completing an interstate service.

Plaintiff in error in *Illinois Cent. R. Co. v. Peery*, 242 U. S. 292, was engaged in interstate commerce, its lines extending through and into several states. In that case, the conductor in charge of one of the company's trains was injured while returning from a trip between points in the state of Kentucky, and while in charge of a train consisting wholly of intrastate freight. The court, in its decision, treated the round trip as one, and the return as merely the necessary complement of the trip out. The extension of the company's lines into and across several states was an invitation for interstate traffic, and its train crews and equipment were engaged largely therein. In the case at bar, defendant's lines were confined wholly within the state, and

its instrumentalities are used in interstate commerce only when employed in moving freight received from without, or consigned to a point beyond the state line. When not so employed, its business was intrastate. The service of both defendant and deceased in interstate commerce was completed some time before the accident. The movement of the train from the transfer track, and the placing of the cars on one of defendant's sidings, the caboose upon another, and the motor in the barn, did not partake of the character of interstate commerce. *Erie R. Co. v. Welsh,* is closely in point, and supports our conclusion. See the decision of the Supreme Court of Ohio in this case, 89 Ohio St. 81 (105 N. E. 189).

*Ross v. Sheldon,* 176 Iowa 618, is cited by appellee, but the holding of the court in that case in no wise conflicts with the views herein expressed. While this court must follow the decisions of the Supreme Court of the United States in questions involving injuries arising under the Federal Employers' Liability Act, we are convinced that the case at bar is distinguished from the cited cases, and comes within the scope of our Compensation Act.

It is our conclusion that the trial court committed error in holding that deceased, at the time he was fatally injured, was engaged in interstate commerce. The judgment of the court below is, therefore,—*Reversed.*

LADD, C. J., EVANS and GAYNOR, JJ., concur.