## KELLY v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Third Circuit. December 26, 1916.)

No. 2157

COMMERCE ☞27(8)—INJURIES TO SERVANT—EMPLOYERS' LIABILITY ACT—"EMPLOYED IN INTERSTATE COMMERCE."

Proof that a railroad carpenter had been sent to repair a chute which supplied coal to engines engaged both in interstate and intrastate commerce, the nature of the repairs not being shown, and that after waiting a time at the yardmaster's office to get a car of lumber shifted to the chute, he started to walk toward the chute, and was run over by the lumber car while it was being moved by a work train not then engaged in any particular task, does not show that the carpenter was employed in interstate commerce, or in work so closely connected with it as to be practically a part of it, and therefore does not establish a right to recover under Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (Comp. St. 1913, §§ 8657–8665).

[Ed. Note.—For other cases, see Commerce, Dec. Dig. ☞27(8).

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by Clara Kelly, as executrix of Elmer J. Kelly, deceased, against the Pennsylvania Railroad Company. Judgment refusing to take off a compulsory nonsuit, and plaintiff brings error. Affirmed.

Kincaid & Kincaid, of Corry, Pa., and Brooks & English, of Erie, Pa., for plaintiff in error.

Thompson & Rossiter, of Erie, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The plaintiff is the widow and executrix of Elmer J. Kelly, and is suing the Pennsylvania Railroad Company under the amended Act of 1908 to recover damages for her husband's death. On January 23, 1914, he was run over and instantly killed in the company's yard at Corry, Pa. The defendant is an interstate carrier, and operates (among other branches) a line from Buffalo to Pittsburgh, this line running through the city of Corry.

The deceased was a foreman of carpenters on the Chautauqua division, which extends from Buffalo to Oil City, Pa., and had gone to Corry for the purpose of making repairs of some kind to the coal chutes and roundhouse in that city; these structures being used for both kinds of business, interstate and intrastate. So far as appears, Kelly did no work on the roundhouse, but sent one of his men to the roof of that building, while he himself went to a signal tower in the neighborhood, where he waited for an hour or two until he had arranged with the yardmaster to move a car of lumber to a track near the chutes. This arrangement having been made, and the car having been taken hold of by a work train consisting of an engine, a tool car,

and a caboose, he walked from the tower toward the chutes in the middle of the track, or close alongside, and while on the way was run over by the train, which was backing toward him without a man on the end thus presented. As the trial judge entered a nonsuit, we assume the defendant's negligence.

Kelly's general duty required him to go over the division from time to time in order to repair bridges, chutes, roundhouses, and other structures. The chutes in question were used for coaling the defendant's engines, of which some were used in the yard, and some on the road. The tools on the work train were used wherever needed on the division, but at the time of the accident they were not in use, and their immediate employment was not in contemplation. The plaintiff's contention is, of course, that both her husband and the defendant were engaged in interstate commerce at the time he was killed, and the nonsuit is put on the ground that the evidence did not establish the fact that Kelly was so engaged. The opinion of Judge Orr is as follows:

This matter comes before the court upon a motion to take off a compulsory nonsuit.

This action was brought under the Employers' Liability Act of Congress, and if there be jurisdiction in this court to entertain the suit, then such jurisdiction must rest solely upon said act, because there is no diversity of citizenship between the parties.

The facts, as they were developed by the testimony on the part of the plaintiff are as follows:

The decedent was in the employ of the defendant company, which is a common carrier, operating, among others, a line of railroad from Buffalo, in the state of New York, to Pittsburgh, in the state of Pennsylvania.

Decedent's title and duties were those of a master carpenter or master foreman of carpenters. He was required to engage in and oversee carpenter work at different points along the line of railroad aforesaid, both in the state of New York and in the state of Pennsylvania. On the day when he was killed, he went from Titusville to Corry, where he met with his death. On that day, therefore, he was wholly within the state of Pennsylvania. After his arrival at Corry, he directed, and perhaps engaged in, certain work upon the roof of a roundhouse which was used for the storage of engines, and intended not only, perhaps, to carry on the work upon the roof of the roundhouse, but to repair a coal chute by means of which coal would be delivered to the engines. Lumber was needed for this purpose. He went some distance from the place where he was working to the office of the yardmaster at Corry to have the latter cause a certain car of lumber, which was then upon the storage track in the yard, to be moved from such storage track up to the point where the repairs were to be made. Owing to the fact that the shifting engine used in the yard was then in use at another point, there was considerable delay in the execution of the service which the decedent required. During such period of delay, he remained in or near the yardmaster's office. A tool or repair train having come into the yard, the yardmaster caused the same to shift the car of lumber from the storage track up to the point where the lumber was required. The decedent walked back in the direction of the place where he intended to work on or along the track, and in some way was struck by the car which contained the lumber.

After the plaintiff's evidence had closed, the defendant made a motion to dismiss the case for want of jurisdiction, alleging what may be briefly divided into two grounds: That the evidence did not show that the deceased was engaged in interstate commerce; or that the defendant was engaged in interstate commerce at the time of the accident. The court sustained the defendant's motion. The trial judge, because of some knowledge of Pederson v. D., L. & W. R. R., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C,

153, and yet not distinguishing that case from the case at hand, expressed the view that the second reason in support of the motion was the stronger: the opportunity for distinguishing that decision from subsequent decisions of the Supreme Court being limited. Upon careful consideration, however, the court is of the opinion that the first reason is perhaps the more substantial, and that because the plaintiff's evidence did not show that the decedent was, at the time of the accident, engaged in interstate transportation, or work so closely related to it as to be practically part of it, that therefore the plaintiff was not entitled to maintain her action.

The case of Shanks v. D., L. & W. R. R. Co., 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797, is helpful. The test there laid down is expressed in the following language:

"Having in mind the nature and usual course of the business to which the act relates, and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one, better suited to the occasion (see Swift & Co. v. United States, 196 U. S. 375, 398, 25 Sup. Ct. 276, 49 L. Ed. 518), and that the true test of employment in such commerce in the sense intended is: Was the employé at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?"

That test is applied in that opinion to the facts of previous cases in that court. That portion of the opinion relating to previous decisions where the application of the test shows that the employé was not engaged in interstate commerce is as follows:

"Without departing from this test, we also have held that the requisite employment in interstate commerce does not exist where a member of a switching crew, whose general work extends to both interstate and intrastate traffic, is engaged in hauling a train or drag of cars, all loaded with intrastate freight, from one part of a city to another (Ill. Cent. R. R. v. Behrens, 233 U. S. 473 [34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163]), and where an employé in a colliery operated by a railroad company is mining coal intended to be used in the company's locomotives moving in interstate commerce (Del., Lack. & West. R. R. v. Yurkonis, 238 U. S. 439 [35 Sup. Ct. 902, 59 L. Ed. 1397]). In neither instance could the service indicated be said to be interstate transportation, or so closely related to it as to be practically a part of it."

The facts of the case itself are quite analogous to the facts in the case now before the court. Shanks was employed in taking down and putting up fixtures in a machine shop conducted by the railroad company for repairing locomotives used in interstate and intrastate transportation. It was held that he could not maintain his action under the Employers' Liability Act, although on other occasions his employment related to interstate commerce. In a later case (Chicago, Burlington & Quincy R. R. v. Harrington, 241 U. S. 177 [36 Sup. Ct. 517, 60 L. Ed. 941], decided May 1, 1916) the Supreme Court again emphasizes the test to be applied in determining the nature of the employment in interstate commerce at the time of the injury to the employé. In that case the railroad company insisted that the employé was engaged in interstate commerce, and that therefore the Employers' Liability Act applied, rather than the law of the state in which the action arose. In that case, at the time the employé was killed he was engaged in causing the removal of coal from storage tracks to the coal shed or chutes by which the same would be delivered to locomotives in interstate hauls. The Supreme Court held that the act of Congress did not apply, because there was no close or direct relation to interstate transportation in the taking of the coal to the coal chutes. What is there, then, in the case at bar from which it can be inferred that Kelly was, at the time he was killed, engaged in interstate transportation? His engagement in causing the transfer of the lumber from the storage tracks to the place where it was to be used does not connect him more closely with transportation than Harrington's engagement in taking coal from the storage tracks to the coal chutes. In neither case was there such close direct relation to interstate transportation as would require the application of the provisions of the law.

238 F.—7

Plaintiff's decedent, therefore, not being engaged in interstate transportation, plaintiff could not maintain an action for his death in this court. It is unnecessary to consider whether the railroad, at the time of Kelly's death, was engaged in interstate commerce. There were movements in interstate commerce along the line of its railroad at other points than at Corry, but the defendant, at that place, was not engaged in such transportation at that time.

Motion to take off the nonsuit is refused.

Not much need be added to what is thus said. The recent decision of Railroad Co. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941, seems to be clearly in point. Indeed, the present case is perhaps the stronger, for beyond the fact that something was to be done to the chutes we know nothing of its character or extent. It may have been some inconsiderable matter, related only remotely to interstate transportation, and, as the plaintiff was bound to show that it was "so closely related to it as to be practically a part of it," we think it plain that in any aspect of the question the District Court was right in holding that the case broke down for lack of proof.

The judgment is affirmed.