E. B. CAPPS, ADMINISTRATOR OF I. M. WILLIAMSON, v. THE ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 3 December, 1919.)

1. **Railroads—Commerce—Statutes—Federal Employer's Liability Act—Employer and Employee—Master and Servant—Personal Injury.**

   The purpose and design of the Federal Employer's Liability Act is to regulate suits for physical injuries or death of employees of railroad companies, while engaged as common carriers of interstate commerce, wrongfully caused by the negligence of the officers, agents, or employees of such carriers, or by reason of negligence in its cars, engines, appliances, machinery, tracks, roadbed, works, bolts, wharves, or other equipment, and, when applicable, affords the controlling and exclusive rule of liability, requiring that both the carrier and the employee be engaged in interstate commerce, the latter being employed in the particular service as a part of interstate commerce, at the time of the injury, or in aid thereof, or so nearly related to it as to be practically a part of it.

2. **Same—Courts—Jurisdiction—Motions—Evidence—Nonsuits—Trials.**

   A carpenter, employed by a railroad company in repairing a chute within a State for the supply of coal to its interstate and intrastate trains, is not engaged in interstate commerce within the intent and meaning of the Federal Employer's Liability Act, and his suit under the act to recover damages for a personal injury thus occurring, alleged to have been caused by the railroad's negligence, brought in the State courts, will. on motion for judgment as of nonsuit, be dismissed.

CLARK, C. J., concurring.

CIVIL ACTION, tried before *Bond, J.,* at February Term, 1919, of WILSON, to recover damages for alleged negligent killing of plaintiff's intestate.

The plaintiff sues, and insists on his right to recover, under the Federal Employer's Liability Act, and it is admitted that defendant company at the time was a railroad corporation engaged as a common carrier in transporting inter- and intrastate commerce. There were also facts in evidence tending to show that at the time of the killing, August, 1915, intestate was a member of a carpenter force in the employment of the defendant company, and as such was engaged in repairing a coal chute of defendant situated in the city of Richmond, Va., one of defendant's principal terminals, when the steps leading up on the chute gave way,

causing intestate to fall 30 to 40 feet, and resulting in fatal injuries, from which he soon thereafter died. The intestate, and the force with which he was at work, had been nailing plank on the body of the chute, the better to hold in the coal, and that at the precise time of the injury, as we understand the evidence, were replacing a defective stringer in the upper flight of the steps leading up on the chute. This coal chute was a large wooden structure used for storing or holding coal to be supplied to defendant's trains, some of which were engaged in transporting interstate and others intrastate passengers and freight, etc. There was also testimony tending to establish culpable negligence on the part of defendant— the proximate cause of the killing.

At the close of the testimony, the court, assuming the existence of facts tending to show negligence on the part of defendant, on motion, entered judgment of nonsuit and for the reason that the facts did not justify a recovery under the Federal statute on which the plaintiff bases his claim. Thereupon, plaintiff having duly excepted, appealed.

*O. P. Dickinson, Manning & Kitchin, and James H. Pou for plaintiff.*
*F. S. Spruill and Carl H. Davis for defendant.*

HOKE, J., after stating the case: The Federal Employer's Liability Act, Federal Statutes Anno. 1909, Supp., p. 584, is designed and purports to regulate suits for physical injuries or death of employees of railroad companies, while engaged as common carriers of interstate commerce, wrongfully caused by the negligence of the officers, agents, or employees of such carriers, or by reason of negligence in its cars, engines, appliances, machinery, track, roadbed, works, bolts, wharves, or other equipment. It is now well established that this statute, when the same applies, affords the controlling and exclusive rule of liability in these cases, and authoritative decisions construing the same are to the effect that in order to its proper application both the carrier and the employee must be engaged in interstate commerce, and in reference to the latter, in a more recent case, the position is stated with approval as follows: "As to the employee the act applies where the particular service in which he is employed at the time of the injury is a part of interstate commerce." *Ill. Cen. Ry. v. Behrens,* 233 U. S., 473; *Pendersen v. D. L. & W. R. R.,* 229 U. S., 146; *Belch v. R. R.,* 176 N. C., 22, and authorities cited.

The cases on the subject hold further that the service of the employee should be properly considered a part of interstate commerce when his act at the time of the injury "was in aid of interstate transportation or so nearly related to it as to be practically a part of it." *Philadelphia, etc., Ry. v. Smith,* current Supreme Court Reporter U. S., p. 397; *Kinzell v. Chicago, etc., Ry.,* advance opinion S. C., p. 477; *Erie, etc., Ry. v.*

*Winfried,* 244 U. S., p. 174; *So. Ry. v. Puckett,* 244 U. S., p. 570; *Receivers North Texas, etc., Ry. v. Rosenbaum,* 240 U. S., 439. These and other like decisions being in approval and illustration of the *Pendersen case, supra,* where it was determined that the act applied where the injured employee was engaged in carrying bolts to be used in the repairs of a bridge then being made; the bridge being within the confines of a State, but used by the company for both inter- and instrastate commerce, this, on the ground that as the bridge was itself an instrumentality of interstate transportation, the act of repairing it was necessarily one in aid of such transportation.

On the other hand, it was held in the case of *Shanks v. Del., etc., Ry.,* 239 U. S., 556, that where an employee in a machine shop of a railroad company engaged in intra- and interstate transportation was injured in taking down and putting up fixtures in the shop where engines engaged in such transportation were being repaired, could not maintain an action under the statute. And applying the principle to the subject of coal as an agency of transportation, it has been held, in *Del., etc., Ry. v. Yukonis,* 238 U. S., 439, that an employee of the carrier engaged in mining coal for use in interstate locomotives was not engaged in interstate commerce within the meaning of the Federal act. And in *Chicago, etc., Ry. v. Harrington,* 241 U. S., 177, that the statute was not applicable where the employee of the company was injured while engaged in removing coal from storage tracks where it had remained for some time to the company's coal sheds or chutes to be used in interstate hauls. And a similar ruling was made in *Lehigh Valley R. R. v. Barlow,* 244 U. S., 183. In the last case the injury seems to have been received on the unloading trestle in the yards of the company. Again, in *Kelly v. Pa. R. R.,* 238 Fed., 95, it was held by the Circuit Court of Appeals on third circuit that a plaintiff's cause was not within the statute when he, a foreman of a carpenter squad engaged in work of the company, had gone with some of his hands to do repair work on a roundhouse and coal chute, these structures being used for both classes of transportation, one of his men had been sent up on the roundhouse when plaintiff went to a signal tower near to procure material required for the repairs, and was run over and killed by a train on his way back to his work.

And in the very recent case of *New York Central Ry. v. Gallagher, Guardian,* 248 U. S., 559, a petition for *certiorari* was denied in a suit where an employee of a company engaged in transporting both kinds of commerce, was killed in repairing coal packets of the company from which coal was supplied from time to time to locomotives engaged in both inter- and intrastate commerce. That case originated on petition before the industrial commission of the State of New York, under a State statute for a claim on behalf of the infant dependent children of Daniel

T. Gearity, the deceased employee; the facts stated being to the effect that he came to his death from injuries received by a fall from a plank on which he was standing and engaged in cutting heads off bolts in the coal packet building, etc. The commission have allowed the claim, the cause was carried by appeal of the railroad company to the appellate division of the Supreme Court on the ground that as the facts disclosed a case under the Federal Employer's Liability Act, the proceeding under the State statute could not be maintained. The court ruled that the Federal act did not apply, and in sustaining the award of petitioner's claim, it was held that a carpenter in the general employ of a State railroad engaged in repairing coal pockets from which coal was supplied to engines of the company engaged in inter- and intrastate commerce, was not engaged in repairing an instrumentality of interstate commerce, so as to prevent the application of the State statute, etc., 180 N. Y. Appellate Division Supreme Court, page 88. This ruling was affirmed by the Court of Appeal (222 N. Y., 649), a petition for *certiorari* to the Supreme Court of the United States setting forth that the facts brought the cause within the provisions of the Federal Employer's Liability Act was denied as stated.

True, the action of the Supreme Court on these petitions for *certiorari* is not always necessarily intended to be controlling as a precedent, the exercise of revising power of the Court in this manner being to some extent discretionary (*Hamilton Shoe Co. v. Wolf Bros.,* 240 U. S., 251; *Forsyth v. Hammond,* 166 U. S., 514, 515); but on a judgment making final disposition of the cause, and where the petition for *certiorari* directly challenged the right of the State board to allow the claim, on the ground that the Federal statute was controlling in the matter, it is the reasonable and well nigh the necessary inference that the Supreme Court of the United States intended to affirm the ruling of the New York Court that the act of the deceased employee was not one in aid of interstate commerce. From these decisions we conclude that coal as an agency of interstate transportation does not become such until it is supplied, or in the act of being supplied, to engines or trains engaged at the time in carrying interstate commerce, and that the making of repairs on a chute or structure where it is stored for the purpose of being supplied to inter- and intrastate engines as called for is not such an act in aid of interstate transportation as to bring an injured employee's cause within the provisions of the Federal statute, the same being too remote.

The case of *B. & O. R. R. v. Branson,* 242 U. S., 623, reversing a decision of the State Court in which recovery had been awarded under the Federal act, and two decisions in the State Court where relief under the act was denied, *Zavitocki's Administrator v. Chicago Ry.,* 161 Wis., 461,

and case of *Grand Trunk Ry.,* reported in 100, at p. 908, are in general approval of the position.

The plaintiff, who is insisting on his right of recovery under the Federal statute, having failed to bring his case within its provisions, has been properly nonsuited and the judgment of the Superior Court to that effect is affirmed. *S. Louis, etc., Ry. v. Seal,* 229 U. S., 156; *Belch v. R. R.,* 176 N. C., 22.

Affirmed.

CLARK, C. J., concurring: The line between the acts of an employee done in interstate commerce and those which are done in intrastate commerce is not always easy to define. But that line has never been "run, marked, and chopped" more definitely probably than in the opinion of *Mr. Justice Hoke* in this case.

The distinction seems to be this, that when the act of the employee is in the aid of *operating* in interstate commerce, then the employee is in interstate service; but when he is doing an act which is not in the direct aid of the *operation* of interstate traffic, then it is not. Otherwise, if a railroad company should build a warehouse, or a station, or other building, or do other work for the general use of the road, then the employee would be engaged in interstate commerce, which would take in all the employees of these corporations.

The cases cited in the opinion of *Judge Hoke* seems to bear out this distinction. The case of *Pendersen v. R. R.,* 229 U. S., 146, where the employee, when injured, was engaged in carrying bolts to be used in the repair of a bridge seems to be in conflict with the others cited, unless it can be explained upon the ground that the bridge on a railroad operating in two States is constantly being used in transportation, and, therefore, keeping it in repair is necessarily in aid of the *operation* of interstate commerce; whereas, removing coal from storage tracks, or burning coal for use of engines in interstate commerce, or putting up fixtures in the roundhouse where engines used in interstate commerce are being repaired, are not acts in the direct operation of interstate commerce, and hence employees injured in doing such acts cannot sue under the "Federal Employer's Liability Act."

In the *Pendersen case, supra,* three judges dissented, and the majority opinion held that the ruling would not apply if the bridge was being constructed, instead of being repaired.