IDA MAY SOUTHWELL, ADMINISTRATRIX OF H. J. SOUTHWELL, v.
ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 8 April, 1925.)

1. **Evidence—Nonsuit.**

   The evidence, upon defendant's motion to nonsuit thereon, will be considered in the light most favorable to the plaintiff, and the motion will be denied if thus considered it is legally sufficient to support a verdict in plaintiff's favor.

2. **Carriers—Employer and Employee—Master and Servant—Railroads—Wrongful Death—Homicide—Vice-Principal—Evidence—Nonsuit.**

   A railroad company is held liable for the homicide of its employee on its railroad yard by another employee, when its vice-principal thereon was or should have been aware beforehand of the intended killing, and should with the exercise of proper care have prevented it, and where the evidence is conflicting as to whether the killing could have been thus prevented by the defendant's vice-principal acting for the defendant at the time, the question should be submitted to the jury, whether the deceased was engaged in interstate commerce at the time of his death, or in intrastate commerce.

3. **Employer and Employee—Master and Servant—Vice-Principal—Torts.**

   As a general rule, a principal who intrusts an employee with authority to control other employees, is held responsible for the manner in which this authority is exercised.

VARSER, J., not sitting.

APPEAL by plaintiff from a judgment of nonsuit rendered by *Grady, J.,* at October Term, 1924, of NEW HANOVER.

On 18 July, 1922, plaintiff's intestate, a locomotive engineer employed by the defendant, at the end of his run from Fayetteville to Wilmington, carried his engine to the roundhouse and after attending to duties incident to the day's work started home. While yet on defendant's premises and going along the usual exit, about 7 p. m., he was shot with a pistol and killed by H. E. Dallas, who was assistant yardmaster and special policeman during a strike. At the conclusion of plaintiff's evidence the defendant's motion to dismiss the action as in case of nonsuit was allowed, and the plaintiff excepted and appealed. The material facts are stated in the opinion.

*Clayton Grant, Weeks & Cox and Dye & Clark for plaintiff.*
*Rountree & Carr, Thos. W. Davis and V. E. Phelps for defendant.*

ADAMS, J. In the complaint neither the Federal Employers' Liability Act nor the State statute (C. S., 3466) is specifically pleaded, but in the answer it is alleged that at the time of the intestate's injury and

death the defendant was engaged and the intestate was employed in interstate commerce. The only testimony on the question was that of E. L. Fonvielle, a witness for the plaintiff. He said that the deceased was the engineer on train No. 322, hauling freight from Fayetteville to Wilmington, and that in the train were cars which were to be carried from places within to places without the State. The carriage of these cars, the defendant argues, constituted commerce among the states. *Pennsylvania Co. v. Donat,* 239 U. S., 49, 60 Law Ed., 139; *Pennsylvania Co. v. Sonman Co.,* 242 U. S., 120, 61 Law Ed., 188; *York Mfg. Co. v. Colley,* 247 U. S., 21, 62 Law Ed., 963; *R. R. v. Zachary,* 232 U. S., 248, 58 Law Ed., 591. It is also contended that the deceased was employed in interstate commerce at the time he was shot by Dallas, though he was then leaving the defendant's yards after his day's work. *Erie Railroad v. Winfield,* 244 U. S., 170, 61 Law Ed., 1057; *So. Ry. Co. v. Puckett, ibid.,* 571, 61 Law Ed., 1321; *R. R. v. Zachary, supra; Hinson v. R. R.,* 172 N. C., 646; *Davis v. R. R.,* 158 N. W. (Minn.), 911; *Easter v. R. R.,* 86 S. E. (W. Va.), 37; *R. R. v. Walker's Admr.,* 172 S. W. (Ky.), 517. See, also, Annotation, 10 A. L. R., 1184.

Upon these propositions the defendant rests its contention that it was engaged in interstate commerce and that the intestate was employed in such commerce at the time of his injury, and that the controversy must therefore be determined in accordance with the Federal law. It is further insisted that under the Federal act the right of recovery is always predicated only upon proof of injury or death proximately resulting from the defendant's negligence, and never upon proof of wilful homicide committed by the defendant's officer, agent, or other employee. *R. R. v. Winfield,* 244 U. S., 147, 61 Law Ed., 1045; *Davis v. Green,* 260 U. S., 349, 67 Law Ed., 299; *Roebuck v. R. R.,* 162 Pac., 1153; *Roberts v. R. R.,* 143 N. C., 176; *Belch v. R. R.,* 176 N. C., 22; *Capps v. R. R.,* 178 N. C., 558; U. S. Compiled Sts. sec. 8657 *et seq.*

If we resolve these questions in favor of the defendant we are yet to determine whether there is any evidence of its actionable negligence, for it is settled law that a motion to dismiss an action as in case of nonsuit will be denied if there is evidence which, most favorably considered, will support a verdict for the plaintiff. C. S., 567 and citations. A deliberate review of the record has convinced us that there is evidence of the defendant's negligence which should have been submitted to the jury. A master owes his servant the same duty to respect his person that he owes third persons and is required to exercise due care for his safety. Jaggard on Torts, 280 (92), 992. Cooley states the principle in these words: "The rule that a master is responsible to persons who are injured by the negligence of those in his service, is subject to the general exception: that he is not responsible to one person in his employ

for an injury occasioned by the negligence of another in the same service, unless generally or in respect of the particular duty then resting upon the negligent employee, the latter so far occupied the position of his principal as to render the principal chargeable for his negligence as for personal fault. Torts, 3 ed., 1173.

It is obvious, then, that the question of the defendant's liability, in part at least, involves the relation existing between the defendant and Fonvielle and between Fonvielle and Dallas at the time the shot was fired. There is evidence tending to show that at this time Southwell, Dallas and Fonvielle were still on duty.

True, some of the witnesses testified that Dallas was not in the discharge of his duties after four o'clock; but others said that he went to the office and used the telephone in an effort to find a trainman just a few minutes before the homicide, and that calling the crew was one of the duties assigned him. Lewis was yardmaster; Dallas was his assistant; and Fonvielle was general yardmaster, in authority superior to Dallas. In fact, Fonvielle testified that his subordinates who were on the defendant's premises were subject to his orders as to any work to be done for the company, and that all employees were subject to orders while on duty. There is evidence that he and Dallas were together several minutes immediately preceding the shooting and that he knew of "unpleasant remarks and threats that had occurred several days prior thereto between Dallas and Southwell." As he and Dallas walked from the butting block to the gate in front of the superintendent's office he had his arm around Dallas, knew Dallas was armed with a pistol, and asked him to go to the office. Dallas had told him he wanted to talk to Southwell "and ask him to lay off me and let me alone." Fonvielle saw Dallas and Southwell approaching each other and feared an altercation. He said he wanted to be close to them if anything unpleasant should occur, but after passing through the gate instead of going towards them he turned away and walked in the direction of the station master's office.

As a dying declaration (C. S., 160) Southwell made this statement: "I was coming from my engine and as I approached the truck Mr. Dallas and Mr. Fonvielle stepped from behind the truck and Mr. Dallas raised a gun and Mr. Fonvielle walked in the opposite direction from Dallas."

These and other circumstances favorable to the plaintiff should have been submitted to the jury on the questions whether Dallas and the others were on duty, whether Fonvielle occupied as to the defendant the relation of vice-principal, whether at the time Dallas was subject to Fonvielle's orders, and whether upon the entire evidence the defendant failed in the performance of a legal duty to protect Southwell from

a sudden assault which the defendant through its vice-principal should have foreseen and prevented. "The courts, as a whole, require the master to answer for the negligence of a vice-principal whenever the default complained of consists in the omission to take such precautions as a prudent man would, under the circumstances, have taken for the purpose of protecting the injured subordinate against some peril of the transitory class, against which he had no adequate means of guarding himself." 4 Labott, Master & Servant, 4308, sec. 1471. The general rule that a principal who intrusts an employee with authority to control other employees is held responsible for the manner in which it is exercised and for the omission properly to exercise it is sustained in numerous decisions. *Tanner v. Lumber Co.,* 140 N. C., 475; *Shaw v. Mfg. Co.,* 146 N. C., 235; *Holton v. Lumber Co.,* 152 N. C., 68; *Walters v. Lumber Co.,* 165 N. C., 388; *Hollifield v. Tel. Co.,* 172 N. C., 714.

We think the judgment of nonsuit should be set aside and a new trial awarded, and for this reason we refrain from a discussion of the other alleged grounds of liability.

Error.

VARSER, J., not sitting.