EUGENE KELLY, Appellant, v. ERIE RAILROAD COMPANY, Respondent.

Fourth Department, July 1, 1919.

**Railroads — Federal Employers' Liability Act — employee engaged in interstate commerce while oiling machinery used to supply water for locomotives — assumption of risk — question for jury.**

An employee of a railroad company operating an interstate railroad, who, while oiling machinery at the direction of the defendant's station master at a point in this State, was caught in the unguarded gearing which connected a gasoline engine and pump for supplying water for locomotives, was at the time engaged in interstate commerce, within the meaning of the Federal Employers' Liability Act.

In an action by said employee for injuries sustained, *held*, that the question as to assumption of risk was one for the jury.

APPEAL by the plaintiff, Eugene Kelly, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Steuben on the 28th day of June, 1917, upon the dismissal of the complaint by direction of the court at the close of plaintiff's case.

*J. W. Hollis*, for the appellant.

*Cheney, Phillips & Greene* [*Floyd G. Greene* of counsel], for the respondent.

KRUSE, P. J.:

The plaintiff, an employee of the defendant, was caught in the unguarded gearing which connected the engine and pump for supplying water for locomotives, and was injured. The action was brought under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143) and the primary question is whether the work the plaintiff was doing at the time of the accident was so closely connected with interstate commerce as to make it a part thereof within the meaning of the Federal act.

The defendant operates a railroad between New York and Chicago. Its traffic includes both interstate and intrastate commerce. A pumping station is maintained at Addison in this State. The pump is operated by a gasoline engine. The water is pumped from the Canisteo river into an elevated tank, which holds enough to supply three or four engines. Engines belonging to another railroad are also supplied there, and the water is also used for general purposes in connection with the railroad station there.

The crank shaft of the engine was connected with the pumping machinery by means of a clutch, consisting of a series of cog wheels. The cogs were usually guarded by means of cylindrical metal shields, but at the time of the accident the guard was not in place; it had been removed to make needed repairs. The repairs had been made but the guard had not been replaced.

The trouble was in the clutch; it had slipped, and the man in charge of the repair work wanted to see how it worked. The station master told the plaintiff to start the pump; he did so. After that the man in charge said the shaft needed oiling.

The plaintiff reached over to oil the shaft and his clothes were caught in the unguarded gearing, as has been stated. He says he did not know the guard had been removed; he was not told and he did not notice that it was not in place. The tank was empty and it was necessary that the pump be put in operation and the tank supplied with water as soon as possible. The plaintiff assisted the station master and was under his direction. He had operated the pump for several months two or three times a day.

The learned trial judge held that the work which the plaintiff was doing at the time of the accident was too remote from the work of interstate transportation to come within the Federal act, and nonsuited the plaintiff. Assumption of risk is also urged as grounds for sustaining the nonsuit. We think that question was for the jury. (*Great Northern R. Co.* v. *Knapp,* 240 U. S. 464; *Chesapeake & Ohio Railway* v. *DeAtley,* 241 id. 310; *Conway* v. *Naylor,* 222 N. Y. 437, 442.)

As to the question of interstate commerce, the case of *Erie Railroad Company* v. *Collins,* decided by the United States Circuit Court of Appeals November 7, 1918, seems to be in point.

The law itself is plain, but whether it is applicable to a given case is not often free from difficulty. (*Middleton* v. *Texas Power & Light Co.,* 249 U. S. 152, 158.)

Thus it has been held that a workman about to repair a railroad bridge is engaged in interstate commerce while carrying bolts needed in his work from a tool car to the bridge. (*Pedersen* v. *D., L. & W. Railroad,* 229 U. S. 146.) But that a switchman engaged in switching loaded cars belonging to the railroad company from a storage track to a coal shed is not employed in interstate commerce, though the coal is to be used by locomotives in interstate hauls. (*Chicago, B. & Q. R. R.* v. *Harrington,* 241 U. S. 177; *Lehigh Valley R. R. Co.* v. *Barlow,* 244 id. 183.) The work here was one step nearer in furthering interstate transportation than that of the switchman; it is more like shoveling the coal into the chute.

The *Knapp Case* (*supra*) is much like the case in hand and a recovery under the Federal act was sustained; but, as pointed out by Mr. Justice HUGHES in the *Harrington* case, the question

as to whether the employee was engaged in interstate commerce was not raised.

It has also been held that an employee working on an engine in a railroad shop was not engaged in interstate commerce, though the engine had theretofore and was thereafter used in interstate commerce. (*Minneapolis & St. Louis R. R. Co.* v. *Winters*, 242 U. S. 353.) The work in that case was distinguished from matters, such as repairs upon a road permanently devoted to commerce among States, and it was said that an engine is not permanently devoted to any kind of traffic, and that the particular engine there was not destined to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on; it simply had furnished some interstate business and had not yet begun upon any other; that at the moment it was not engaged in either kind of commerce; that its character as an instrument of commerce depended upon its employment at the time and not upon remote probabilities or incidental later events.

In *Philadelphia, B. & W. R. R. Co.* v. *Smith* (250 U. S. 101), decided by the United States Supreme Court recently (May 19, 1919), it was held that a cook for a gang of bridge carpenters quartered in a car was engaged in work so closely related to interstate commerce, while cooking food belonging to himself and the carpenters, as to come within the provisions of the act. The work of preparing food for bridge carpenters, who keep a railroad in usable condition, may be a little nearer in furthering interstate transportation than the work of the man who pumps the water into the tank for supplying engines which haul the trains over the road; but the latter work may be near enough to make it interstate commerce work within the meaning of the Federal act. Anyway, I think we should follow the decision of the United States Circuit Court of Appeals in the *Collins* case.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

All concurred.

Judgment reversed and new trial granted, with costs to the appellant to abide the event.