WILLIAM MULSTAY, Appellee, v. DES MOINES UNION RAILWAY COMPANY, Appellant.

**RAILROADS:** Federal Employers' Liability Act—Interstate Employment. A switchman is engaged in interstate commerce when he is engaged in moving, within switch yards, cars which are used exclusively in interstate commerce, even though, after commencing such movement, the same is suspended a very short time, to enable the crew to place some intrastate cars upon a sidetrack, and the switchman is injured just as he is in the act of remounting the moving engine, which is on its way to complete the moving of said interstate cars.

**NEGLIGENCE:** Acts Constituting—Projecting Boltheads on Footboard. It is not negligent for a railway company to maintain on a switch engine a footboard with oval boltheads extending three sixteenths of an inch above the face of the said footboard.

**NEGLIGENCE:** Acts Constituting—Uneven Railway Track. Evidence held to present a jury question on the issue of low joints in a railway track.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

MARCH 13, 1923.

ACTION under the Federal Employers' Liability Act for damages on account of personal injuries received by appellee, while employed as a switchman in the yards of appellant in the city of Des Moines.   Verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Hughes, Taylor & O'Brien*, for appellant.

*Davis & Michel* and *Robert Haines,* for appellee.

Stevens, J.—I.   Plaintiff, an employee attached to a switching crew of the Des Moines Union Railway Company, a terminal carrier in the city of Des Moines, was seriously injured

1. RAILROADS: Federal Employers' Liability Act: interstate employment.

about 1:30 A. M. on March 1, 1920, by falling or being thrown from the footboard of the engine upon which he was working, and which he had just mounted, or was in the act of mounting, after throwing a switch, and after the engine had commenced its backward movement.   Appellee fell between the rails in such a position that one leg was so injured that it had to be amputated, as did also a part of his other foot.   There was a verdict and judgment for plaintiff in the court below, and defendant appeals.

The first proposition relied upon by appellant for reversal is that appellee was not, at the time his injuries were received, either engaged in interstate commerce or in employment so closely related thereto as to be practically a part of it.   The evidence bearing upon this point is not in serious dispute.   It was the duty of the switching crew to which he was attached, as testified to by him, "to take care of passenger trains from Moberly, Missouri, and sleepers from Chicago and Sioux City, and merchandise from Chicago and St. Louis, put in the freight house.   I did that work practically every night.   I would have freight trains or freight load to spot that came from St. Louis and Chicago.   This Wabash train came from Moberly, Missouri.   This was its destination."

The explanation of appellee's reference to the Wabash train will appear presently.   Shortly before the accident, the switching crew had moved some empty Wabash passenger coaches that had arrived the evening before from Moberly, Missouri, from the coach yard at Fifteenth Street to the east side, where they had been turned around and brought back to a point near the Union depot, between Fifth and Sixth Streets.   Before completing the movement of the empty coaches, which were to be returned to the coach yards for inspection, preparatory for use the following day, the engine was uncoupled, and attached to some sleepers belonging to the Chicago, Milwaukee &

St. Paul Railway Company, that had arrived that evening from Sioux City, for the purpose of placing the same upon the sleeper track.  Having accomplished this act, the engine was uncoupled from these sleepers, and was proceeding to be again attached to the empty coaches, for the purpose of completing the trip to the coach yard.  Appellee dismounted from the footboard at the switch just east of Eighth Street, threw the switch, and perhaps gave the signal to the engineer to back up.  Just after the engine had passed over the switch, appellee attempted to mount, or perhaps succeeded in mounting, the footboard, but immediately fell or was thrown therefrom between the rails, resulting in the injuries complained of.  Based upon this evidence, the court submitted to the jury the question as to whether he was injured while engaged in interstate commerce.

To entitle an employee to recover under the Federal Employers' Liability Act, he must, at the moment of the injury, have been employed in interstate commerce, or in performing labor so closely related thereto as to be practically a part of it. *Illinois Cent. R. Co. v. Behrens,* 233 U. S. 473 (58 L. Ed. 1051) ; *Erie R. Co. v. Welsh,* 242 U. S. 303 (61 L. Ed. 319).

The empty Wabash coaches arrived at Des Moines, their destination, on the evening of February 28th, from Moberly, Missouri.  They were, during this trip, attached to and a part of the regular passenger train of the Wabash Railway Company running daily between the above points.  Whether the switching crew took the coaches from the interstate passenger train upon its arrival at Des Moines and placed the same in the coach yards at Fifteenth Street is not shown, nor is it material.  After the coaches had been returned from the east side to the coach yards for inspection, appellant had nothing further to do with them.  In making up the train for its trip the following day, the cars would be handled by the employees of the Wabash Railway Company.  Appellee testified that one of the two Milwaukee sleepers was to be attached, later during the night, to a Milwaukee train leaving Des Moines for Chicago, Illinois.  In this he is probably mistaken.  The jury could not well have found otherwise than that the empty Wabash coaches were destined to form a part of the regular Wabash train running daily from Des Moines to Moberly, Missouri.  The movement

of them on the night in question was for the very purpose of placing them in position for such use.

Some contention is made on behalf of appellant that the evidence would not warrant a finding by the jury that the empty coaches were certainly to be used the following day as a part of the train to Moberly. This contention, as already indicated, cannot be sustained. Many decisions of the Supreme Court of the United States, which are controlling, are cited and relied upon by the respective parties. It seems to us that, under these decisions, appellee was clearly engaged in services so closely related to interstate commerce as to be practically a part of it. The record fairly shows that the Milwaukee sleepers were used only in intrastate transportation; but this is of little importance in this case. The movement of the Milwaukee sleepers bore no relation whatever to the movement of the empty coaches, as appellee seems to contend. The switching crew merely suspended the movement of the empty coaches, for the purpose of placing the sleepers upon the sleeper track. This was perhaps the more expeditious and convenient method of disposing of or handling the respective cars. It was a part of the nightly duty of the switching crew to take the empty Wabash coaches from the coach yards to the "Y" on the east side, turn them around, and return them to their former place for inspection, preparatory to being used on the following day in interstate transportation. There was no uncertainty as to what was to be done with the cars after they were returned to the coach yard. This, within the holding of the Supreme Court of the United States in *Seaboard A. L. Railway v. Koennecke,* 239 U. S. 352 (60 L. Ed. 324), *Pennsylvania Co. v. Donat,* 239 U. S. 50 (60 L. Ed. 139), *New York C. & H. R. R. Co. v. Carr,* 238 U. S. 260 (59 L. Ed. 1298), and *Louisville & N. R. Co. v. Parker,* 242 U. S. 13 (61 L. Ed. 119), constituted services so closely related to interstate commerce as to be a part of it. These cases are clearly distinguishable from *Illinois Cent. R. Co. v. Behrens,* supra, *Erie R. Co. v. Welsh,* supra, *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177 (60 L. Ed. 941), *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556, and *Minneapolis & St. L. R. Co. v. Winters,* 242 U. S. 353 (61 L. Ed. 358), cited and relied upon by counsel for appellee. The distinction becomes readily apparent upon

reading the decisions, and we shall not extend this opinion for the purpose of pointing it out. We recently discussed the question and reviewed many decisions of the United States Supreme Court and of this court. *Slatinka v. United States R. Adm.*, 194 Iowa 159.

II. Two grounds of negligence are charged against appellant: one the equipment of the switch engine with a defective footboard; and the other, the maintenance of its roadbed in a

2. NEGLIGENCE: acts constituting: projecting boltheads on footboard.

defective and dangerous condition, the result of improper ballast and a low joint in the rails which caused the engine, in passing over it, to lurch, and throw appellee off the footboard. The engine was equipped with suitable hand-

holds, and the footboard was firmly attached to the rear of the engine by bolts, the heads of which protruded above its upper surface. The heads of these bolts were round, and tapered to the edges so as to be practically level with the surface of the board.

It is the contention of appellee that it was negligence for appellant to permit the heads of these bolts to extend above the surface of the footboard, and that it was its duty to countersink them. The footboard was offered as an exhibit in the court below, and is certified to this court for inspection. The bolt upon which appellee claims to have stepped, causing his foot to slip, is partially countersunk. Some claim is made in the evidence that it is not in the exact condition that it was at the time of the accident. The witnesses agree, however, that the bolts were tight, and that only their heads, as above stated, extended above the surface.

Appellant, at the conclusion of all the evidence, moved the court to withdraw this issue of negligence from the jury. The motion was overruled. The duty of the appellant to equip its switch engines with footboards so constructed as to be reasonably safe for its employees is, of course, conceded; but it is argued by counsel that, if the failure amounted, in this case, to actionable negligence, it virtually becomes an insurer of the safety of such of its employees as are required to use the same. Appellee's foot could not have come in contact with the bolthead in such a way as to trip him. This is manifest from an inspec-

tion of it. The inference to be drawn from his testimony is that it caused him to slip and fall when the engine "lurched" in passing over the low point in the track. The engine was moving about three or four miles per hour, at the time of the accident. It is, of course, possible that appellee's foot may have slipped upon the bolthead, although it did not extend over three sixteenths of an inch above the surface; but it is also possible that it might have slipped upon the level surface of the board. Appellant was not an insurer of the safety of appellee. Perhaps it might have been better if the boltheads had been countersunk, but we cannot bring ourselves to hold that the failure to do this constitutes actionable negligence. Perfection is not attainable in matters of this kind. The occupation of a switchman is, in itself, more or less hazardous, and this fact should be taken into consideration by the employer in the equipment of its engines with footboards; but the danger to be apprehended from the protrusion of the center of a bolthead above the surface of the footboard for only three sixteenths of an inch is too remote to charge the carriers with negligence because thereof. The motion to withdraw this issue from the jury should have been sustained. This conclusion is in no sense inconsistent with what we said in *Melody v. Des Moines Union R. Co.*, 161 Iowa 695. The conditions complained of in the two cases are wholly dissimilar.

Appellant also pleaded that appellee knew of the defects complained of, and assumed such risk as was incident thereto. The evidence shows that he had been employed as a switchman by appellant for two years, and that he knew that the boltheads were not countersunk. This he admitted had been the subject of discussion among his coemployees. His opportunity to know and appreciate the danger, if any, to be apprehended from the condition of the boltheads was equal to that of his employer.

In view, however, of our conclusion that this issue of negligence should not have been submitted to the jury, we shall not pass upon the question of assumption of risk. Furthermore, we are not inclined to hold that the evidence shows such knowledge by appellee of the condition of the track and such appreciation of the dangers arising therefrom as that the court can say, as a matter of law, that he assumed the risk thereof. This

issue was submitted to the jury by what, we assume, was an appropriate instruction, as it is not complained of.

III. The evidence is conflicting as to the condition of the track; but appellee and another employee testified that there was a low joint near where the accident occurred, and that it had existed for a considerable time. Appellee

3. NEGLIGENCE: acts constituting: uneven railway track.

further testified that the engine lurched when it passed over this low place in the track, and threw him off the footboard. Just what force would be applied by the movement of the engine at a speed of three or four miles an hour in passing over the low place in the track, and the probability that appellee, an experienced switchman, might be thrown from the footboard, were questions of fact. Although conflicting inferences might reasonably be drawn from the facts, this does not make it a question of law, but the contrary. Much evidence was introduced which contradicted appellee's testimony that there was a low place in the track at the place where he was injured, but the credibility of the witnesses was for the jury. The court cannot say who told the truth. We think that this issue presented a question for the jury.

It will serve no good purpose to discuss the authorities cited by counsel upon this point. Other matters complained of are not likely to arise upon a retrial, and we omit them from our discussion. For the reasons pointed out above, the judgment of the court below must be and is—*Reversed.*

PRESTON, C. J., EVANS and DE GRAFF, JJ., concur.