PERRY A. JOHNSTON, Appellee, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

No. 39585.

MAY 7, 1929.

*Davis, McLaughlin & Hise* and *James C. Davis, Jr.,* for appellant.

*H. W. Hanson,* for appellee.

WAGNER, J.—The facts in this case are not in dispute. The defendant company operates a railroad, one terminus being at Eagle Grove, Iowa, and the other at Elmore, Minnesota, and each day in the week, except Sunday, runs a local or way freight train from the former to the latter place. This train carries both interstate and intrastate shipments. The service rendered is · to pick up and set out cars at the various stations between the terminals, do the station switching, and unload and load such freight as might be destined to, or consigned from, any of the stations along the route. At the time in question, the plaintiff was in the employ of the defendant company as a "station helper" at Algona. The duties of the plaintiff were to perform various kinds of work about the station, including the loading and unloading of freight. It goes without saying that freight consigned to Algona would necessarily have to be unloaded, before the interstate train could proceed upon its journey. On December 23, 1925, there was coupled in, and moved as an integral part of, the freight train a refrigerator car in which there were no interstate shipments, but only intrastate consignments; but in other cars comprising a portion of the train were articles of interstate commerce, which were being transported by it to a destination in another state. The aforesaid car, containing the intrastate shipments, which were of a perishable nature, was a refrigerator car. Upon the arrival of the train at Algona, the plaintiff, in conformity with his duties, assisted in unloading the local freight. He entered the refrigerator car, picked up one or more of the shipments, and, in stepping from the car to the station platform, fell, and was severely injured. After the unloading of the freight, said refrigerator car, with the rest of the train, proceeded to its terminal destination. The plaintiff filed with the industrial commissioner his application for arbitration. The defendant filed an answer, admitting the employment and the injury, but alleged that, at the time of the injury, the plaintiff was engaged in interstate commerce, and that the industrial commis-

sioner was without jurisdiction to hear the facts or determine the merits of the claim. The deputy industrial commissioner, sitting as a board of arbitration, granted plaintiff an award as against the defendant. On a review before the commissioner, the decision of the board of arbitration was affirmed. On appeal to the district court, the action of the commissioner was affirmed, and from this latter action the defendant company has appealed to this court.

The commissioner, in rendering his decision, admits that this is a "border-line case," but found that the appellee, at the time of his injury, was not employed in interstate commerce.

The Federal Employers' Liability Act provides:

"Every common carrier by railroad while engaging in commerce between any of the several states or territories, or between any of the states and territories, or between the District of Columbia and any of the states or territories, or between the District of Columbia or any of the states or territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * *." Section 8657, U. S. Compiled Statutes; 35 Statutes at Large 65.

Under the undisputed facts, the train was an interstate train, and the appellant was engaged in interstate commerce. *North Carolina R. Co. v. Zachary,* 232 U. S. 248 (58 L. Ed. 591); *Chicago, R. I. & P. R. Co. v. Wright,* 239 U. S. 548 (60 L. Ed. 431); *Northern Pac. R. Co. v. State of Washington,* 222 U. S. 370 (56 L. Ed. 237); *New York Cent. & H. R. R. Co. v. Carr,* 238 U. S. 260 (59 L. Ed. 1298); *Hester v. East Tennessee & W. N. C. R. Co.,* 254 Fed. 787; *Waters v. Guile,* 234 Fed. 532.

The controlling question in this case is: Was the appellee, at the moment of his injury, employed in interstate commerce, or in performing labor so closely related thereto as to be practically a part of it?

It is the contention of the appellee that, the industrial commissioner having made the finding that, at the time of the injury, the plaintiff was employed in intrastate commerce, the

 same stands upon the same footing as the verdict of a jury, and is binding upon the lower court, and also upon this court. It is only where there is a conflict in the evidence that the findings of the commissioner are conclusive. There is no dispute relative to the facts in this case. When the facts are not in dispute, or if there is not sufficient competent evidence to support the findings of the commissioner, then said findings are not binding upon the courts, and the order based thereon may be reviewed and set aside. *Tunnicliff v. Bettendorf*, 204 Iowa 168; *Rish v. Iowa Portland Cement Co.*, 186 Iowa 443; *Bidwell Coal Co. v. Davidson*, 187 Iowa 809; *Norton v. Day Coal Co.*, 192 Iowa 160; *Kent v. Kent*, 202 Iowa 1044; *Johnson v. City of Albia*, 203 Iowa 1171; *Flint v. City of Eldon*, 191 Iowa 845. Since the facts are not in dispute, the conclusion to be drawn therefrom as to whether or not the appellee, at the time of the injury, was employed in intrastate commerce or interstate commerce, or in performing labor so closely related to interstate commerce as to be practically a part of it, is for the determination of the court, regardless of the conclusion arrived at by the industrial commissioner.

Moreover, the defendant in its answer raises the question of the jurisdiction of the commissioner to hear the facts or determine the merits of the claim. In *Bidwell Coal Co. v. Davidson*, supra, we said:

"It is argued in this case that we are bound by the fact finding of the board of arbitration, and the finding of the commissioner on review. It is true that, as to disputed facts which do not go to the jurisdiction, we are bound by the finding of the commissioner; but where the only question presented is whether or not the jurisdictional fact exists, entitling the person to be heard before the commissioner, we have a right to review the action of the commissioner, even to the extent of finding the fact to be other than the commissioner found it."

It is provided by Section 1453 of the Code of 1924 that any order or decision by the industrial commissioner may be modified, reversed, or set aside on one or more of the following grounds:

"1. If the commissioner acted without or in excess of his powers. * * * 4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

It is apparent that, if the facts bring the case within the Federal Employers' Liability Act, then the industrial commissioner was without power or jurisdiction to grant relief; for, in that event, the employee must resort to the Federal Act. *Des Moines Union R. Co. v. Funk,* 185 Iowa 330; *New York Cent. R. Co. v. Winfield,* 244 U. S. 147 (61 L. Ed. 1045); *Erie R. Co. v. Winfield,* 244 U. S. 170 (61 L. Ed. 1057).

This brings us to a consideration of the pivotal and controlling question in the case: Was the appellee, at the time of his injury, employed in interstate commerce or in performing labor so closely related thereto as to be practically a part of it? This is indeed a troublesome question. Two of our most recent pronouncements involving the Federal Employers' Liability Act are *Slatinka v. United States R. Adm.,* 194 Iowa 159, and *Mulstay v. Des Moines Union R. Co.,* 195 Iowa 513, in both of which cases it was held that the injured employee's rights were controlled by the Act. In the *Slatinka* case, a résumé of many decisions is given.

It is a well recognized principle that, in construing a Federal act, the decisions of the United States courts are binding and conclusive upon the state courts. *State v. Eckenrode,* 148 Iowa 173; *Smith v. Interurban R. Co.,* 186 Iowa 1045.

It is true that the "station helper" had duties to perform other than what he was doing at the identical moment of his injury, but the test is: Was he, at that moment, employed in interstate commerce or work so closely related to it as to be practically a part of it? *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556 (60 L. Ed. 436); *New York Cent. & H. R. R. Co. v. Carr,* 238 U. S. 260 (59 L. Ed. 1298); *Illinois Cent. R. Co. v. Behrens,* 233 U. S. 473 (58 L. Ed. 1051); *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146 (57 L. Ed. 1125); *Slatinka v. United States R. Adm.,* 194 Iowa 159; *Mulstay v. Des Moines Union R. Co.,* 195 Iowa 513.

In the *Shanks* case, we find the following pronouncement:

"The question for decision is, Was Shanks at the time of the injury employed in interstate commerce, within the meaning

of the Employers' Liability Act? *What his employment was on other occasions is immaterial; for, as before indicated, the act refers to the service being rendered when the injury was suffered.* [The italics are ours.] Having in mind the nature and usual course of the business to which the act relates, and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one, better suited to the occasion (see *Swift & Co. v. United States*, 196 U. S. 375, 398), and that the true test of employment in such commerce in the sense intended is, Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?''

In *New York Cent. & H. R. R. Co. v. Carr*, supra, we find the following pronouncement:

"Each case must be decided in the light of the particular facts, with a view of determining whether, at the time of the injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof.''

In *Pedersen v. Delaware, L. & W. R. Co.*, supra, it is aptly stated:

"That the defendant was engaged in interstate commerce is conceded, and so we are only concerned with the nature of the work in which the plaintiff was employed at the time of his injury. Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier?''

In *New York Cent. & H. R. R. Co. v. Carr*, supra, two cars of an interstate train were to be left at a local station. Thereafter, the train was to proceed upon its journey. The two cars were uncoupled from the rest of the train, and were switched upon a sidetrack; and during this operation, the injury to the

employee occurred. It was held that the case came within the Federal Employers' Liability Act. It will be observed that, at that time, the employee was engaged in the performance of the duty of leaving the cars at the local station, in order that the interstate train might proceed upon its journey. Likewise, in the instant case, the employee, at the moment of his injury, was engaged in removing local freight, in order that the interstate train might continue on the route. The facts in the cited case are somewhat analogous to the facts in the instant case.

In *Southern R. Co. v. Puckett*, 244 U. S. 571 (61 L. Ed. 1321), plaintiff had been engaged in inspecting cars in an interstate train. While he was awaiting additional cars, to be placed in the train, a collision occurred in the switch yard, in close proximity, and several tracks were blocked by the wreckage. Another employee was caught in the collision. Plaintiff went to his assistance, and was instructed by one of his superiors in authority to get a jack, to assist in extricating O'Berry and clear the track of the wreckage. While plaintiff, assisting in clearing up the wreck, was carrying some blocks, to be used in jacking up the wrecked car and placing it upon the track, he stumbled and fell, injuring himself. In passing upon the decision of the lower court, the Supreme Court made the following pronouncement:

"The court held that, although plaintiff's primary object may have been to rescue his fellow employee, his act, nevertheless, was the first step in clearing the obstruction from the tracks, to the end that the remaining cars for train No. 75 might be hauled over them; that his work facilitated interstate transportation on the railroad; and that consequently he was engaged in interstate commerce when injured. We concur in this view. * * * Of course, we attribute no significance to the fact that plaintiff had been engaged in inspecting interstate cars before he was called aside by the occurrence of the collision."

Likewise, in the instant case, the act of the appellee in removing the local freight facilitated interstate transportation on the railroad.

In *Davis v. Dowling*, 284 Fed. 670, the employee,—the switchman,—received an injury while cutting out an intrastate car. It was held that he was engaged in interstate commerce, at the time of the injury.

In *Pennsylvania R. Co. v. Morrison*, 3 Fed. (2d Ser.) 986, the employee was injured in cutting an intrastate car out of an interstate train, whence it was to be placed on a track, to be assembled in another interstate train. It was held that, at the time of his injury, he was engaged in interstate commerce.

In *In re Claim of Evans v. United States Railroad Adm.*, 191 App. Div. 704 (182 N. Y. Supp. 310), the court made the following pronouncement:

"The claimant was a brakeman on a local freight running between Watertown and Ogdensburg. The train was made up of intrastate cars, but carried a few packages of interstate freight. It was the duty of the claimant, in addition to his work as brakeman, to act as flagman to warn other trains, to assist in switching cars taken from or to be added to his train, and to help in loading or unloading less than carload freight at various way stations. At the time of the infliction of the injury complained of, the train had stopped at Philadelphia, N. Y., alongside a freight car standing on a switch. The claimant had gone aboard this car, and was handling a barrel of oil, when another barrel fell against his hand, injuring one of his fingers so that amputation afterwards became necessary. It was the purpose of the claimant to roll the barrel from the car in which he was working over a plank into a car of his own train. As the local train carried interstate as well as intrastate freight, it is not doubted that the claimant was generally employed in interstate transportation. It is urged, however, that, at the moment, the duties of the claimant were not interstate, for the reason that he was transferring an intrastate package from a stationary car for shipment upon the train to a local point. It has been held that a brakeman on a train containing both intrastate and interstate cars, while engaged in cutting out from the train an intrastate car, in order that the train might proceed upon its interstate journey, is engaged in interstate commerce (*N. Y. C. R. R. Co. v. Carr*, 238 U. S. 260). If the cutting out of an intrastate car from an interstate train is interstate work, then the work of adding such a car to such a train, performed by a brakeman upon the train, must also be interstate. Consequently, the work of removing an intrastate package from a car of such a train, or of transferring an intrastate package to such a car, when performed by one of

the brakemen of the train, must equally well be interstate. The transfer of the package might originate an intrastate shipment, but it would likewise serve an interstate purpose; for the transportation of interstate packages could not proceed until the transfer was complete.''

In *Keathley v. Chesapeake & O. R. Co.*, 85 W. Va. 173 (102 S. E. 244), the plaintiff, a brakeman on an interstate freight train, was injured while engaged in unloading an intrastate shipment from the train. It was held that the employee was engaged in interstate commerce at the time he received his injury, the court declaring:

''* * * his duty in respect to this shipment, nevertheless, pertained to the operation of an interstate train; *for it could not proceed until that duty had been discharged.*'' (The italics are ours.)

In *Vaught v. East Tenn. & W. N. C. R. Co.*, 148 Tenn. 379 (255 S. W. 595), the plaintiff, a truck handler at a local station, while engaged in loading an intrastate shipment into an interstate train, was injured. It was held that said employee, at the time of his injury, was engaged in interstate commerce. The court declared:

''It is true that, at the moment of the accident which resulted in his injury, he was loading into said interstate car an intrastate shipment; still this act was so directly and immediately connected with interstate commerce as to substantially form a part or necessary incident thereof.''

If, as held in the cited case, the loading of an intrastate shipment into a car constituting a portion of an interstate train is labor so closely related to interstate commerce as to be practically a part of it, then the unloading of intrastate shipments in the instant case, so that the train could proceed on its interstate mission, is likewise a part of, or necessary incident to, interstate commerce. Both the loading in the cited case and the unloading in the instant case were done for the purpose of enabling the interstate train to proceed upon its journey. In *Western Railway of Alabama v. Mays*, 197 Ala. 367 (72 So. 641), it is aptly stated:

"The train transporting the barrel of oil, moved as a whole, and one employed in removing freight from a train engaged in interstate commerce, is, of necessity, in such act engaged in interstate commerce."

We reach the conclusion that, at the moment of the injury, appellee, in the unloading of the intrastate shipment, in order that the interstate train might proceed, was engaged in interstate commerce, or in the performance of labor so closely related thereto as to be practically a part of it. This necessitates a reversal of the trial court.

The appellee relies upon *Slatinka v. United States R. Adm.*, supra, and *Mulstay v. Des Moines Union R. Co.*, supra. In both of said cases, we found that the facts brought the case within the Federal Employers' Liability Act. Therefore, said cases are not authority in support of the appellee's contention. The appellee also relies upon *Shanks v. Delaware, L. & W. R. Co.*, supra; *Delaware, L. & W. R. Co. v. Yurkonis*, 238 U. S. 439 (59 L. Ed. 1397); *Chicago, B. & Q. R. Co. v. Harrington*, 241 U. S. 177 (60 L. Ed. 941); *Lehigh Valley R. Co. v. Barlow*, 244 U. S. 183 (61 L. Ed. 1070); but from an examination of said cases it is apparent that they are not analogous to, nor controlling in, the instant case. The distinction between said cases and the instant case becomes readily apparent, upon reading the decisions, and we shall not extend this opinion for the purpose of pointing it out.

For the reasons hereinbefore given, the judgment of the trial court is erroneous, and the same is hereby reversed.—*Reversed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and MORLING, JJ., concur.